INLAND WETLANDS AND WATERCOURSES AGENCY OF THE CITY OF MIDDLETOWN *v.* LANDMARK INVESTMENT GROUP, INC., ET AL.
(14177)

SHEA, GLASS, COVELLO, HULL and BORDEN, Js.

Argued February 22—decision released May 14, 1991

*Russell Lehman,* assistant city attorney, for the appellant (plaintiff).

*Jule A. Crawford,* for the appellee (defendant South Farms of Middletown, Inc.).

BORDEN, J. The plaintiff, the inland wetlands and watercourses agency of the city of Middletown, appeals from the judgment of the trial court denying its motion to set aside a stipulated judgment entered into between it and the defendant South Farms of Middletown, Inc. (defendant).[1] We affirm.

The defendant is the owner of the Talcott Ridge subdivision located in Middletown. In November, 1989, the plaintiff issued a cease and desist order to the defendant for certain alleged violations of the Inland Wetlands and Watercourses Act; General Statutes §§ 22a-36 through 22a-45; at the subdivision. Thereafter, the plaintiff brought this action against the defendant for, inter alia, an injunction restraining the defendant from violating the cease and desist order. In connection therewith, the plaintiff secured an ex parte temporary injunction from the trial court, *Higgins, J.* The defendant then moved to dissolve the temporary injunction.

On December 4, 1989, the parties appeared before the trial court, *Budney, J.,* in an attempt to settle their dispute. Both parties were aware that the state depart-

---

[1] The stipulated judgment also purported to dismiss the plaintiff's complaint as against the named defendant, Landmark Investment Group, Inc., and against another codefendant, Glenn Russo. Those parties have not participated in this appeal.

ment of environmental protection (DEP) had been investigating the defendant's subdivision[2] and it was important to both that the DEP agree to any settlement. The parties had prepared a written stipulation that purported to memorialize their settlement and the DEP's agreement thereto.

The stipulation recited, inter alia, that the plaintiff had sought an injunction to stop the further construction of roadways and other improvements on the defendant's property, that the defendant claimed that the injunction and cease and desist order were without merit, and that the DEP had investigated the project. The parties stipulated, inter alia, to the following provisions: that the case would be dismissed as against two of the defendants; see footnote 1, supra; because the remaining defendant South Farms of Middletown, Inc., was the real party in interest, and that the ex parte injunction would be dissolved. The defendant agreed to complete its construction in accordance with its original permit as modified by an attachment, "Exhibit A," that concerned a soil and erosion control plan.

The dispute in this case revolves around paragraphs four and five of the stipulation. The typewritten portion at the conclusion of paragraph four provides: "The Court shall retain continuing jurisdiction over this matter until the Complaint as originally filed in this matter is finally disposed of." That language is followed by the following handwritten language: "Nothing herein shall be construed to release South Farms of Middletown, Inc. from the requirements of The Water

---

[2] It is not clear from the record whether the DEP had been investigating the subdivision for purposes of determining the defendant's compliance with the Inland Wetlands and Watercourses Act; General Statutes §§ 22a-36 through 22a-45; or the Water Pollution Control Act; General Statutes §§ 22a-416 through 22a-484; or both.

Pollution Control Act ([General Statutes §] 22a-416)."[3] Paragraph five provides in typewritten terms: "The State consents to such Permit and Plan as set forth in Exhibit A and agrees that this Court shall retain continuing jurisdiction over this matter as set forth above." The stipulation was signed by Attorney Michael F. Dowley on behalf of the defendant and by Attorney Timothy P. Lynch on behalf of the plaintiff. Although there was a typewritten entry for the consent of the DEP by its attorney, that entry was not signed.

The court indicated that it had before it the stipulation signed by Dowley and Lynch, and that "[t]he agreement also has certain revisions in writing." The court also expressed its understanding that the DEP, through its attorneys, had agreed to the stipulation, although not in writing, and elicited from Dowley and Lynch their assurance that they had secured that agreement. Dowley represented to the court that he had spoken on the telephone to assistant attorney general Richard Webb, who represented the DEP,[4] that Webb had reviewed a copy of the typewritten stipulation sent to him through telephonic facsimile (fax) technology, and that Webb had agreed to it with two additions, which Dowley had made. Dowley stated that one such addition was to paragraph four, namely, that the defendant was still subject to the Water Pollution Control Act, and that the other was to add certain language to Exhibit A.[5] Dowley concluded: "That is my agreement between the City of Middletown and my client. The

[3] There are also handwritten insertions in paragraph 7 and on Exhibit A that are not at issue in this case.

[4] Although Dowley referred only to "Attorney Webb," it is undisputed that he meant assistant attorney general Webb, who later testified in the hearing on the plaintiff's motion to set aside the judgment that is the subject of this appeal.

[5] Dowley also explained, in general terms, the purport of the other handwritten additions to the stipulation. See footnote 2, supra.

[DEP] has indicated that they could attempt to bring an abatement order should they deem it necessary, but that's the agreement between myself and the City of Middletown." After eliciting from Lynch that Dowley's representations were accurate and that "everyone agrees to the stipulation," the court rendered judgment incorporating the provisions of the stipulation.

On April 2, 1990, the plaintiff filed this motion to set aside the judgment on the ground of mutual mistake of fact. The plaintiff claimed that the parties mistakenly believed that the DEP had agreed to the stipulation, that it had not in fact so agreed, and that the plaintiff would not have entered into the stipulation in the absence of that consent. After an evidentiary hearing, the court, *Budney, J.,* found that there was no mutual mistake of fact, and denied the plaintiff's motion. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

The plaintiff claims that the trial court should have granted its motion because: (1) the court's finding that there was no mutual mistake of fact was clearly erroneous; and (2) in the alternative, if the stipulation is read as the defendant has subsequently claimed, namely, that the plaintiff has ceded wetlands enforcement powers to the jurisdiction of the Superior Court, the stipulation is contrary to public policy. We reject the plaintiff's first claim, and conclude that the second claim is not properly before us.

A judgment rendered upon a stipulation of the parties is in the nature of a contract and may be opened by the court if the stipulation was entered into by mutual mistake. *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980); see also *O'Leary* v. *Industrial Park Corporation,* 211 Conn. 648, 652–53

n.2, 560 A.2d 968 (1989). A mutual mistake is one that is common to both parties and effects a result that neither intended. *Lopinto* v. *Haines,* 185 Conn. 527, 532, 441 A.2d 151 (1981). Whether there has been such mistake is a question of fact. See *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 579, 102 A.2d 345 (1954); see also *Weld* v. *Melly,* 16 Conn. App. 555, 557–58, 548 A.2d 14 (1988).

A finding of fact is clearly erroneous when there is no evidence in the record to support it; *Web Press Services Corporation* v. *New London Motors, Inc.,* 205 Conn. 479, 483, 533 A.2d 1211 (1987); or " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 2d 746 (1948). Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990).

There was no dispute that both Dowley, representing the defendant, and Lynch, representing the plaintiff, believed that the DEP had agreed to the stipulation. That common belief was based on several telephone conversations on December 4, 1989, and accompanying fax transmissions among Dowley, Lynch, Webb and Marla Butts, a senior environmental analyst at the DEP who had been investigating the defendant's subdivision project. The plaintiff claimed in the trial court, however, that this common belief was mistaken because the DEP had not in fact agreed to the provision in paragraph five of the stipulation that the court would retain continuing jurisdiction over the matter. According to the plaintiff, that provision per-

mitted the inference that the DEP had ceded its administrative enforcement powers over the Water Pollution Control Act to the court, despite the handwritten language in paragraph four that "[n]othing herein shall be construed to release [the defendant] from the requirements of" that act, and the DEP had not agreed to such a provision.

Webb testified that he represented the DEP, and that on December 4, 1989, he had a telephone conversation with Dowley in connection with a typewritten stipulation that had been faxed to Butts, who had brought it to his attention. He was aware that the parties were having settlement discussions. He further testified that he expressed to Dowley his concern with paragraph five of the stipulation, wherein "the State consented to [the] Court retaining jurisdiction" because "the DEP has its own enforcement statutes, and since it was not a party to this action, did not want to consent away, through this stipulated agreement, any enforcement . . . powers it might have" in the event the settlement did not resolve all problems to the DEP's satisfaction. He testified further that he told Dowley that he "wanted language that indicated quite clearly that, the DEP was able to enforce pursuant to the State Water Pollution Control Statute." Webb also testified that he did not receive a copy of the stipulation, as ultimately approved with the handwritten additions thereto, until December 7, 1989, and that he then informed Dowley that he had not agreed to the stipulation as ultimately approved.

Webb testified further that on December 4, 1989, he had suggested an insertion to the stipulation to the effect that the DEP would retain its jurisdiction to enforce the act, but that the handwritten language in paragraph four was not sufficient for that purpose because of the language of paragraph five. He read

paragraph five to have the possible meaning that the DEP would no longer have its administrative jurisdiction to enforce the act but would have to apply to the court to do so. In that connection, he testified that it was his understanding that, in a subsequent administrative proceeding, the defendant had raised the defense that the DEP was not authorized to enforce the act against it administratively because of the stipulation. Nonetheless, he testified, the DEP retained its administrative enforcement jurisdiction and had brought administrative proceedings against the defendant pursuant to that jurisdiction.

Butts testified that she received a faxed copy of the proposed stipulation from Dowley on December 4, 1989, that she told Dowley that she wanted to ensure that the DEP's authority to enforce the act was not derogated by the stipulation, and that it was her understanding that she would see a final copy of the stipulation before it was approved by the court. She knew, however, that the parties were in hurried settlement negotiations. She further testified that when she received the final copy by fax several days later she called Dowley and informed him that it was not clear from paragraphs four and five that the stipulation had preserved the DEP's authority to enforce the act without going to court. She also testified that although she had authority to negotiate language of agreements to recommend to her superiors, she had no authority to enter into agreements on behalf of the DEP, and that such authority was reserved for the commissioner or her legal counsel.[6]

Based primarily on this testimony, the plaintiff argues that the finding of the court regarding a lack

---

[6] The plaintiff does not claim that either Webb or Butts lacked authority to agree to the stipulation, presumably because Webb, as the commissioner's counsel, had such authority.

of mutual mistake was clearly erroneous. The plaintiff overlooks, however, the testimony of Dowley and Lynch. Dowley testified that while he and Lynch were negotiating a settlement he knew that the DEP had an interest in his client's project, and that he wanted to be sure that the DEP consented "to what we were consenting to." He testified further that he and Lynch faxed copies of the proposed stipulation to Butts and Webb, and that he had a telephone conversation with Webb, who was looking at the stipulation, wherein Webb told him: "I want you to add the following language." Dowley testified that in the course of that conversation "Marla Butts and [Webb] had the stipulation. They wanted to add—whatever penciled notations are on that stipulation, didn't come from my office. Those penciled notations came from the State of Connecticut." He testified further that after Butts made suggestions regarding the soil erosion and control plan, she told him that she wanted him to have Webb's approval for the "actual language of the document," that he was then switched to Webb, who told him "I want you to add the following language" regarding the Water Pollution Control Act, which Dowley added to the stipulation.

Dowley reasserted the truth of his representation to the court on December 4, 1989, namely, that the DEP had consented to the agreement. He testified that he "spoke . . . the truth that day, in Court," and that "as far as the State of Connecticut is [concerned], I'll swear on a hundred million Bibles, that they consented that day, and that indeed, that is their agreement." Dowley also testified that the defendant, in reliance on the agreement, spent approximately $180,000 in building a roadway. Moreover, a comparison of Webb's and Butts' testimony with that of Dowley indicates that, at least in general, their testimony corroborates his.

Lynch's testimony also corroborated that of Dowley, in part. He testified that Butts, speaking for the DEP, agreed to the stipulation.

On the basis of this record, we cannot say that there was no evidence to support the finding of the trial court that there was no mutual mistake regarding whether the DEP agreed to the stipulation as ultimately presented to the court. Nor can we say that on the entire record, which we have examined with care, we are left with the definite and firm conviction that the court made a mistake in finding as it did.

This does not mean, however, that the arguable ambiguity in paragraphs four and five over whether the DEP has ceded its Water Pollution Control Act enforcement power to the court must or even may be resolved in the defendant's favor. Although there is some suggestion in the trial court file that the defendant has, in subsequent administrative proceedings, taken that position, in oral argument before this court the defendant acknowledged that paragraphs four and five, read together, do not mean that the DEP is barred from enforcing the Water Pollution Control Act administratively, without first going to court. The defendant further conceded to us that the DEP "could enforce the Water Pollution Control Act and certainly it has done so." These acknowledgments, moreover, are consistent with Dowley's representations to the trial court on December 4, 1989, that the DEP had indicated that it could bring abatement proceedings under that act if it deemed them to be necessary. We take these acknowledgments as an explicit concession by the defendant that the DEP is not precluded from enforcing that act without first going to court.[7]

---

[7] Although, as between the plaintiff and the defendant, there was no mutual mistake regarding whether the DEP agreed to the stipulation, in the absence of the DEP as party to this action we express no opinion on the extent, if any, to which the DEP is bound by the stipulation and the judgment incorporating it.

The defendant cannot have it both ways. It cannot make an explicit concession in this court in its attempt to persuade us of the merits of its position in this appeal, and at the same time disclaim that concession in related administrative proceedings. Since the only purported mutual mistake relied on by the plaintiff in this case arose because of the uncertainty over whether paragraph five ousted the DEP of its administrative enforcement powers pursuant to the Water Pollution Control Act, and since the defendant has conceded that it did not, the trial court's finding that there was no mutual mistake must stand.

The plaintiff claims in the alternative, however, that the trial court's finding must fall because it is contrary to public policy for the plaintiff to have ceded its regulatory powers under the Inland Wetlands and Watercourses Act to the court. We decline to consider this claim because it was not presented to the trial court; *O'Hara* v. *State,* 218 Conn. 628, 639, 590 A.2d 948 (1991); and because it involves an inquiry into matters beyond those presented to the trial court on the plaintiff's motion to set aside the judgment.

The trial court was presented only with the plaintiff's claim of mutual mistake. Neither the plaintiff's motion nor its memorandum of law in support thereof made any mention of this alternate claim. Although at one time during its final argument the plaintiff adverted to this claim, the defendant objected to its doing so, and the plaintiff did not pursue the issue further. Furthermore, the basis of the plaintiff's assertion is that the "defendant . . . has stated at every opportunity, including numerous motions still pending in Superior Court, that the [plaintiff] is without authority to issue a cease and desist [order] or revoke the permit of the defendant." The plaintiff argues that the stipulation is contrary to public policy "[i]f the Court were to

accept defendant's claim that this Stipulation in fact says what the defendant claims it says . . . ." (Emphasis added.) Thus, this argument of the plaintiff would involve an initial inquiry into whether the plaintiff, by entering into the stipulation, ceded all future enforcement powers to the court. That question involves a determination of the meaning and scope of the stipulated judgment, which is a factual question of the intention of the parties. *Jucker* v. *Jucker,* 190 Conn. 674, 679, 461 A.2d 1384 (1983); *Verissimo* v. *Verissimo,* 3 Conn. App. 222, 225, 486 A.2d 1134 (1985). Since the trial court was not presented with this question, this record understandably lacks any factual predicate for such a determination.

The judgment is affirmed.

In this opinion the other justices concurred.