[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO ENFORCE SETTLEMENT
The plaintiff brought this action against the defendants, Connecticut Constitution Associates Limited Partnership (Ct. Const.) and General Electric Capital Corporation (G.E. Capital) for a declaratory judgment, injunctive relief and damages by an amended complaint dated November 30, 1999. The plaintiff is the "Hotel Owner" and Ct. Const. is the "Plaza Owner" as defined in a certain Declaration of Reciprocal Easements dated December 13, 1988. G.E. Capital holds a mortgage and security interest from CT. Const. on its plaza property. In its complaint, the plaintiff claims that, as the hotel owner, it has a perpetual, exclusive easement to use 220 designated parking spaces in the south garage adjacent to the hotel with appurtenant access as designated in the Reciprocal Easement to which the plaza property owned by the defendant, Ct. Const., is subject. It further claims that said defendant, since November 30, 1995 has denied the plaintiff access and use of said easement for which the plaintiff has suffered and continues to suffer irreparable harm.
The trial of this matter began on August 4, 1999 and after two days was continued for evidentiary discovery. Subsequently the court (Berger, J.) granted a mistrial and scheduled a new trial date. At the new trial date Judge Berger was informed that a settlement in principle had been accomplished. Judge Berger granted a thirty (30) day continuance so that the settlement could be worked out and a withdrawal filed. On June 28, 2000 a judgment dismissing the action was entered because the parties failed to file a withdrawal by June 16, 2000. Negotiations continued. On October 19, 2000 the plaintiff filed a motion to reopen judgment of dismissal. The motion acknowledged that the case had been previously reported settled to the court but that it has not been finalized and reduced to writing, and the reopening was necessary to prevent the four (4) month period to run after the judgment. The plaintiff also stated that it was operating under the impression that the case is settled but the signed paperwork was not then possessed. Because the efforts of counsel have not produced a voluntary exchange of documents the defendant has filed this Motion to Enforce Settlement Agreement. The two attorneys who participated in the negotiation, Chad Handman and James Nugent along with the plaintiff's real estate agent, Randall Kolados, were called as witnesses and various exhibits were introduced including an affidavit of Steven Greenspan, attorney for the mortgagee on the hotel property and CT Page 5741-gs the transcriptions of the depositions of Paul Potter, secretary of the plaintiff, and Harry Freeman, executive director of the Hartford Economic Development Commission.
The evidence produced that the parties as early as May 15, 2000 had reached an agreement in principle after which, through many months of negotiation, had finally arrived at language satisfactorily clear and unambiguous. The Settlement Agreement and the Easement Agreement were executed, Defendant's Exhibit P, Q, T and U were to be turned over by Mr. Nugent to Chad Landmon at Mr. Landmon's office on December 20, 2000 as part of the exchange of documents. At that point Nugent received a voice mail instructing him not to turn over the documents and the meeting was terminated. The defendant subsequently filed this motion to enforce the Settlement Agreement.
Nugent testified that the reason for the termination of the meeting for the purpose of exchanging the documents on December 20, 2000 was that Randy Kolados, the exclusive real estate agent for the plaintiff's hotel, had learned the City of Hartford was interested in preparing an appraisal of the hotel property for possible eminent domain proceedings. His advice to the plaintiff was that the Easement Agreement would be worthless if the hotel property was condemned.
The plaintiff argues that the Settlement Agreement cannot be enforced for the following reasons: (1) Despite the fact that the Settlement Agreement and easement were executed, there had been no corporate board meeting nor had a corporate resolution been signed authorizing the execution of the Settlement Agreement or easement; (2) if the defendant knew of the City's interest in possible eminent domain, the Settlement Agreement would be unenforceable on the grounds of fraudulent non-disclosure; and (3) if the defendant did not have knowledge of the City's plans before the time that the documents were to be exchanged, then the Settlement Agreement would be unenforceable on grounds of mutual mistake.
 I.
Nugent testified that during his representation of the plaintiff in this case his main contact was with Dan Wasielewski, the manager of the hotel, and on occasion with Paul Potter, secretary of the plaintiff corporation. Through such contact he was able to work out an agreement with defendant's counsel. See Defendant's Exhibits P, Q, T and U. These executed documents were to be exchanged on December 20, 2000 in Landman's office. They were the same sent to Potter in North Carolina and he CT Page 5741-gt recognized Potter's signature which was attested by a notary in North Carolina. Although he had sent Potter a corporate resolution to be executed, he had not returned it. Potter, in his deposition, stated that he had not received a resolution and the agreement became unfavorable before it was received. After Nugent stated to Judge Berger on May 15, 2000 that the case was settled he subsequently filed documents that the case was settled, first on June 12, 2000, Defendant's Exhibit R, and again on October 16, 2000. Defendant's Exhibit S. Kolados who had received exclusive right to show the hotel to prospective buyers, had corroborated the benefit the easement agreement would have in promoting such a sale. No evidence was produced to demonstrate that, prior to December 20, 2000, Nugent or Potter acted beyond the authority granted to them by the corporation. A settlement agreement may be summarily enforced within the frame work of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement. Audubon ParkingAssociates Ltd. Partnership v. Barclay Stubbs, Inc., 225 Conn. 804,814. No dispute existed between the parties at the time their counsel reached a settlement as evidenced by the executed documents. DAPFinancial Management Co. v. Mor-Fam Electric, Inc., 59 Conn. App. 92,98.
 II.
The only evidence presented as to knowledge by the defendant of the possibility of the City's interest in condemning the hotel was that of Harry E. Freeman in his disposition, Plaintiff's Exhibit 4, that he had no information that the defendant knew of such an interest prior to December 20, 2000. Freeman, as executive director of the Hartford Economic Development Commission, stated that his first discussion outside of staff about redeveloping the hotel was with Kolados on December 13, 2000. That discussion was about the two of them being in parallel paths in creating a redevelopment plan for the hotel, Kolados for the plaintiff owner and he for the City. But for the City's interest, he had hired Ms. Lavissiere to obtain an appraisal of the hotel property and had asked Kolados to obtain access to the hotel for him to do the appraisal. At this meeting the term "eminent domain" was used. The court concludes that, on December 20, 2000, there isn't sufficient evidence to find a fraudulent non-disclosure on the part of the defendant.
 III.
As to the plaintiff's claim of mutual mistake, there is no demonstration that a third party such as the City was a party to the contract or settlement which caused the parties to act mistakenly. InlandCT Page 5741-guWetlands Watercourses Agency v. Landmark Investment Group, Inc.,218 Conn. 703, 712. The equitable theory of mutual mistake is based on an instrument that does not conform to the real agreement agreed upon and does not express the intention of the parties as the result of mutual mistake or the mistake of one party coupled with actual or constructive fraud, or in equitable conduct on the part of the other. Lopinto v.Haines, 185 Conn. 527, 531. At the time this action was brought Freeman was not even employed by the City and even today his use of the term "the possible use of eminent domain" does not create a condition which can lend itself to the equitable theory of mutual mistake. It is not a common mistake or one where the defendant had acted improperly. At most it would offer the plaintiff a possibility to receive compensation for its property without the burden of the settlement which the plaintiff sought with the defendant. However, no dispute existed between the parties at the time their counsel reached a settlement as evidenced by the executed document. DAP Financial Management Co. v. Mor-Fam Electric, Inc.,59 Conn. App. 92, 98.
For the above reasons the court grants the defendant's Motion to Enforce the Settlement Agreement.
Thomas H. Corrigan, Judge Trial Referee