GORDON L. JONES *v.* LINDA C. JONES
(AC 29354)

Flynn, C. J., and Lavine and Hennessy, Js.

Argued October 21—officially released December 23, 2008

*Leon M. Kaatz*, for the appellant (plaintiff).

*George W. Kramer*, for the appellee (defendant).

*Opinion*

PER CURIAM. Our rules of practice provide that "[i]t is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this section, the term 'record' is not limited to its meaning pursuant to Section 63-4 (a) (2), but includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety." Practice Book § 61-10. "Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]." (Internal quotation marks omitted.) *Moreira* v. *Moreira*, 105 Conn. App. 637, 641, 938 A.2d 1289 (2008).

The plaintiff, Gordon L. Jones, appeals from the judgment of the trial court opening the judgment of dissolution and ordering him to pay the defendant, Linda C. Jones, 50 percent of his pension benefits, adjusted for coverture and the interim period between dissolution and retirement, and 50 percent of his accrued benefits, adjusted for the period of continued service from the date of the dissolution and the date of retirement. The plaintiff claims that the court improperly (1) opened the judgment, (2) concluded that paragraph twelve of the stipulated judgment of dissolution was ambiguous, (3) concluded that his accrued leave at the time of dissolution was property subject to division between

the parties and (4) concluded that the dissolution judgment was manifestly unfair without considering the totality of the circumstances. The record is inadequate for us to review the plaintiff's claims, and, thus, we affirm the judgment.

On October 23, 2006, the defendant filed a motion to open the dissolution judgment on the basis of fraud.[1] The court held a hearing on December 22, 2006, and January 26, February 7 and 27 and March 29, 2007. The court rendered its decision on October 18, 2007. In its memorandum of decision, the court found that all of the witnesses testified credibly. It also found that the parties were married on September 10, 1983, and that two children were born of the marriage.[2] The plaintiff sought a dissolution of the marriage by complaint dated March 20, 2001. Both parties were represented by counsel, and the court rendered judgment of dissolution on October 21, 2002, incorporating the parties' separation agreement (agreement).[3]

Prior to the rendering of judgment in the dissolution action, the case was pretried by a special master, and three judicial pretrials were held. The parties did not reach agreement, however, until the morning trial was to commence. The financial affidavit filed by the plaintiff on October 21, 2002, represented that he was employed as a police officer by the city of Hartford and that his gross weekly earnings were $1556 and his net income was $1037. Under deferred compensation, he reported "Hartford police pension present value 2" as

---

[1] The defendant cited no statute or rule of practice in her motion.

[2] The children have reached the age of majority.

[3] Counsel representing the parties testified at the hearing on the motion to open. The transcript provided to this court contains the testimony of the defendant's trial counsel, Frank J. Romeo III, but only a portion of the testimony of the plaintiff's trial counsel, Leon M. Kaatz. The plaintiff did not provide a copy of the transcript of the defendant's direct examination of Kaatz. The plaintiff did provide a copy of his direct examination of Kaatz.

$98,966. The defendant's financial affidavit disclosed that she was employed as a receptionist by a law firm and that her gross weekly income was $300 and her net income was $230.

Following the dissolution, the qualified domestic relations order (QDRO) called for in § 12 of the agreement[4] became a matter of disagreement between counsel for the parties. Counsel met with representatives of the city of Hartford but failed to resolve their disagreement. Frank J. Romeo III, then counsel for the defendant, filed a motion for clarification and order postjudgment dated January 8, 2004. Leon M. Kaatz, counsel for the plaintiff, filed an objection. Counsel submitted briefs following oral argument held on July 14, 2004. The court found that "[i]t appears the pension provision was based on ambiguous or erroneous information" and on "the inclusion of overtime, vacation and sick pay in the computation of the value of the pension at the time of

---

[4] Section twelve of the agreement stated: "Pensions. Plaintiff shall assign to Defendant, by way of a Qualified Domestic Relations Order (QDRO), a portion of his pension presently in place for him through his place of employment. Said QDRO shall call for the payment to Defendant of an amount equal to $1,483.00 per month (one half of benefit, adjusted for coverture) starting in September 2022 and continuing until Plaintiff's decease. The foregoing notwithstanding, if the provisions of Plaintiff's pension program will allow for said payments to continue to Defendant's decease, should Defendant outlive Plaintiff, then said QDRO shall be drafted to allow for said provision. Counsel for Plaintiff shall be responsible for the preparation of said QDRO. Except as already provided for in this paragraph, each Party shall keep and retain as his or her own property, free and clear of any claims from the other Party, any pension plans, IRA's, 401K plans, incentive savings plans, Keogh Plans, or the like, which said Party presently owns in his or her own name or which is maintained for the benefit of said Party. Nothing contained in this paragraph shall be construed as precluding Defendant from attempting to arrange a payment plan with the administrator of Plaintiff's pension, which payment plan will be the actuarial equivalent of what is called for hereinabove but which plan will call for Defendant to receive smaller monthly payments over a longer period of time, provided that said payment plan causes no deviation in what Plaintiff will receive as his pension if the QDRO provisions first set out in this paragraph are implemented."

dissolution." George Kramer, substitute counsel for the defendant, thereafter filed a motion to open the judgment.

In its October 18, 2007 memorandum of decision, the court found that the alimony provision of the agreement continued to be fair and equitable. The court also found, on the basis of testimony from Elaine Shetensky, an actuary with the city's pension plan administrator, that the plaintiff retired from his employment with the police department in September, 2003, at which time he began to receive his pension of $6450.28 per month.[5] On the basis of the parties' testimony, the court found that the plaintiff was contemplating early retirement at the time of the dissolution proceedings. At the time of his retirement, the plaintiff had accrued vacation time of $13,562.44, holiday time of $33,353.55, compensatory time of $745.10 and a perfect attendance benefit of $1205.55 for a total of $48,866.64, according to Michael Matles, supervising payroll manager for the city of Hartford. The plaintiff also had accrued sick time benefits of $29,669.93, a portion of which he used to enhance his pension benefits. The accrued benefits were not included on the plaintiff's financial affidavit at the time of the dissolution of marriage. Sheldon Wishnick, a consulting actuary for Actuarial Litigation Services, testified that the value of the plaintiff's pension at the time of dissolution adjusted for coverture was $989,500. At the time of dissolution, the plaintiff had been married to the defendant for nineteen of the twenty-one years he had been a Hartford police officer.

Kaatz and Romeo made several attempts at completing the QDRO order. Romeo was adamant that the defendant was entitled to 50 percent of the plaintiff's pension. The court stated that the crux of the disagreement centered on the delay in benefits to be received

---

[5] The plaintiff thereafter found employment in the security field, initially earning approximately $65,000 annually.

by the defendant until 2022, the year the plaintiff becomes age sixty-five. According to Romeo, the court found, it was represented to him at the time of the dissolution negotiations that even if the plaintiff retired early, he could not receive his pension benefits until he becomes age sixty-five. In actuality, the plaintiff began to receive his pension benefits of $6450 per month as soon as he retired, but the defendant would not be able to receive benefits until the plaintiff becomes sixty-five in 2022. Kaatz, the plaintiff's counsel, acknowledged that some of the assumptions he made to calculate the plaintiff's pension in negotiating the agreement were incorrect, but he denied ever telling Romeo that the plaintiff could not retire until age sixty-five.

The court found that "a manifest injustice would occur if the defendant would not receive any pension benefits until the year 2022 while the plaintiff [already is receiving his pension benefits]. There were substantial mutual mistakes made in this case, and the judgment is opened." The court did not identify, however, the specific, substantial mutual mistakes made or what substantial means. Moreover, the court cited no law and provided no legal analysis in support of its conclusion that manifest injustice would occur if the defendant did not receive pension benefits until 2022. Neither party filed a motion for articulation of the court's memorandum of decision. See Practice Book § 66-5.

A judgment rendered on a stipulation of the parties is in the nature of a contract and may be opened by the court if the stipulation was entered into by mutual mistake. See *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980). "Whether there has been [a mutual] mistake is a question of fact." *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991). In this case, the court failed to identify the mistake or

mistakes made. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative. . . . [S]peculation and conjecture . . . have no place in appellate review." (Citation omitted; internal quotation marks omitted.) *Konefal* v. *Konefal*, 107 Conn. App. 354, 360, 945 A.2d 484, cert. denied, 288 Conn. 902, 952 A.2d 810 (2008). "Accordingly, [w]hen the decision of the trial court does not make the factual predicate of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." *Watrous* v. *Watrous*, 108 Conn. App. 813, 835, 949 A.2d 557 (2008).

The judgment is affirmed.