C & H ASSOCIATES LIMITED PARTNERSHIP *v.* TOWN
OF STRATFORD ET AL.
(AC 30215)

Flynn, C. J., and Gruendel and Sullivan, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 20—officially released June 29, 2010

*Jan A. Marcus*, for the appellant (plaintiff).

*Warren L. Holcomb*, for the appellees (defendants).

*Adam J. Cohen* filed a brief for the Connecticut Tax Collectors' Association, Inc., as amicus curiae.

### Opinion

GRUENDEL, J. The plaintiff, C & H Associates Limited Partnership, appeals from the judgment of the trial court granting the motion to set aside the verdict filed by the defendants, the town of Stratford, Lisa Biagiarelli, the town tax assessor, and David L. Valente, the town tax collector, and directing a verdict in their favor on all counts of the plaintiff's complaint. On appeal,

the plaintiff claims that the court improperly granted that motion. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In 1986, the plaintiff purchased two apartment buildings in Stratford, one located at 556 Hollister Street and the other at 446 Hollister Street. The plaintiff then converted the apartment units within those buildings into condominium units and renamed the properties Cedar Heights Condominiums. There were a total of sixty-six condominium units, including fifty-four one bedroom, four two bedroom and eight studio units. In 1988, the plaintiff sold twenty-eight units. In 1989, the real estate market worsened, and despite reducing prices and offering incentives, the plaintiff sold only fifteen or sixteen units. The market further worsened in the 1990s. Between 1993 and 2000, the plaintiff sold only one unit.

In 1991, Stratford conducted a townwide revaluation of real property, pursuant to General Statutes § 12-62, on which taxes were to be based. It had been Stratford's policy to assign all like units the same value. It also had been Stratford's policy to first value one bedrooms and then base the value of studios at 82 percent and two bedrooms at 125 percent of the value of one bedrooms. As part of the 1991 revaluation, Valente assigned all one bedrooms in the Cedar Heights Condominiums a value of $62,000 and all studios there a value of $51,000. Those values were reflected in the grand list year of 1991. The plaintiff appealed from that valuation to the Stratford board of assessment appeals (board), contending that they were too high. The board decided to maintain the values assigned by Valente.

Valente assigned the same values to the same units for the grand list years of 1992 and 1993. The plaintiff

appealed only the 1993 values to the board, again contending that they were too high. At that time, the plaintiff owned thirty-eight[1] of the sixty-six units at Cedar Heights Condominiums. The board again decided to maintain the values assigned by Valente. Following the board's decision, the plaintiff appealed to the Superior Court. To prevent Stratford from bringing an enforcement action to collect delinquent taxes during the appeal, the plaintiff paid 75 percent of the taxes due for the 1993 grand list on units it owned that were at issue in the appeal, pursuant to General Statutes § 12-117a. Biagiarelli, in turn, recorded certificates of continuing lien on each of those units to secure the payment of taxes in excess of the 75 percent already paid by the plaintiff, and added the statutorily set recording fee of $24 to each of those units, pursuant to General Statutes §§ 7-34a, 12-175 and 12-176.[2] The plaintiff did not pay any taxes for the 1994 grand list because it expected the court to reduce the value of its one bedrooms to approximately $30,000, in which case it would have received a credit for overpaying taxes. Because the plaintiff had failed to pay its taxes, Biagiarelli recorded certificates of continuing lien on every unit the plaintiff owned for the 1994 grand list year and each year thereafter until it became current on its payments after 2001.

As the appeal was ongoing, Valente, in light of the worsening real estate market, reduced the value of one bedrooms from $62,000 to $49,000 and studios from $51,000 to $40,000 for the 1994 grand list. Then, on October 7, 1998, the court, *Gormley, J.*, found that "the appraisal value of each of [thirty-eight] bedroom condominiums as set forth in counts [one] through [thirty-eight] to be $45,000." As such, the court found that the

---

[1] Thirty-four units were one bedroom and four were studios.

[2] The statutes require the imposition of fees totaling $24 to prepare, to record and to release each lien. See General Statutes §§ 12-176 ($4 to the tax collector) and 7-34a ($20 to the town clerk).

plaintiff had overpaid its taxes for the 1993 grand list year and was later given a credit by Stratford. In applying the court's decision, Valente reduced the assessed value of one bedrooms but raised that of studios owned by the plaintiff so that both were valued at $45,000. This marked the first time that Stratford intentionally had assigned one bedrooms and studios the same value. Notably, the plaintiff did not appeal from the court's decision. Despite the plaintiff's having received a credit for its overpayment of taxes, Biagiarelli refused to waive the $24 lien release fee charged to the plaintiff. Biagiarelli testified that she had a statutory obligation to charge for the release of the lien fees regardless of the outcome of the plaintiff's appeal.

For the 1998 grand list, Valente assigned reduced values to the twenty-eight units that were not at issue in the appeal in accordance with the 1994 grand list— $49,000 for one bedrooms and $40,000 for studios. In 1999, the plaintiff appealed to the board from the valuations on the 1998 grand list, seeking a court order that (1) one bedrooms it had acquired during the 1993 appeal be valued the same as the thirty-four one bedrooms valued at $45,000 by the court; (2) the four studios it owned subject to the court appeal and the three units it had acquired during the appeal be assessed at 82 percent of the value of one bedrooms; (3) one bedrooms not owned by the plaintiff be adjusted so all one bedrooms were valued the same; and (4) the value of all units in the Cedar Heights Condominiums be further reduced in light of the worsening real estate market. The board denied the plaintiff's requests and instead raised the value of the three studios it had acquired during the appeal to $45,000.

In 2001, the plaintiff filed a complaint against Stratford, Valente and Biagiarelli in which it alleged, inter alia, that the defendants' respective actions in valuing and taxing its units, as well as refusing to waive the lien

release fee charges, violated its right to equal protection under both the federal and state constitutions.[3] The defendants raised as special defenses qualified immunity and failure to state a claim on which relief can be granted. A trial followed, at the conclusion of which the jury returned a general verdict against all three defendants.[4] Thereafter, the defendants filed a motion to set aside the verdict and for a directed verdict in their favor on all counts. Following oral argument on July 2, 2008, the court, *Hon. Edward F. Stodolink*, judge trial referee, granted those motions and rendered judgment in favor of the defendants. From that judgment, the plaintiff appeals.

As an initial matter, we set forth the applicable standard of review and legal principles that guide our analysis. "Our standard for reviewing a challenge to a directed verdict is well settled. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680,

---

[3] Although the plaintiff's complaint contained additional allegations, at trial, it proceeded only on its equal protection claims. Because the plaintiff has undertaken no independent analysis of its state constitutional claim, we address only its claim under the federal constitution. See *State* v. *Johnson*, 288 Conn. 236, 244 n.14, 951 A.2d 1257 (2008).

[4] The jury awarded $0 in compensatory damages and $15,700 in punitive damages against Biagiarelli, $0 in compensatory damages and $10,400 in punitive damages against Valente, and $75,000 in compensatory damages and $150,000 in punitive damages against Stratford.

693, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

"The [e]qual [p]rotection [c]lause requires that the government treat all similarly situated people alike. . . . Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. . . . The [United States] Supreme Court [has] affirmed the validity of such class of one claims where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (Internal quotation marks omitted.) *Fillion* v. *Hannon*, 106 Conn. App. 745, 756, 943 A.2d 528 (2008); see also *Village of Willowbrook* v. *Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Kelo* v. *New London*, 268 Conn. 1, 107, 843 A.2d 500 (2004), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005).

In granting the defendants' motion for a directed verdict, the court found that there was no evidence before the jury of individuals similarly situated to the plaintiff. It stated: "We heard much about the fact that the plaintiff's units were being, shall we say, affected in various ways, but there was no indication that the other units somehow were similarly situated but were treated differently because once the appeals were brought on the units that were owned by the plaintiff, I would think almost as a matter of law the other units would not be comparators." The court added: "And I think that one of the requirements to show lack of equal protection is that somehow other people were not being lien—a lien fee was not being charged, and I don't think there was any evidence in the case that that was true, not

even a surmise, although in argument possibly, but not in evidence. . . . There just was no evidence other than saying these individuals were somehow discriminating against the plaintiff, but there was no evidence of anyone else being not discriminated against so-to-speak."

On appeal, the plaintiff claims that the court improperly granted the defendants' motion to set aside the verdict and directed a verdict in their favor. Specifically, it contends that the evidence adduced at trial showed that the actions of certain Stratford officials resulted in the disparate treatment of the plaintiff as compared to other owners of units in the Cedar Heights Condominiums and other condominium owners in Stratford. On our review of the record, we agree with the court that the plaintiff failed to produce any evidence from which the jury could have compared the treatment that the plaintiff had received to that of others similarly situated, as is required in order to prevail on an equal protection claim. We therefore conclude that the court properly granted the defendants' motion for a directed verdict.[5] Accordingly, the plaintiff's claim fails.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Because we conclude that the court properly determined that the plaintiff had failed to produce any evidence from which the jury could compare the treatment it received to others similarly situated, we need not consider the plaintiff's equal protection claim any further.

[6] Our conclusion that the court properly directed a verdict in the defendants' favor also leads us to conclude that the court properly set aside the verdict, which the plaintiff also challenges on appeal.