SELENA BROOKS *v.* DANIEL SWEENEY ET AL.
(SC 18459)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille,
Zarella and McLachlan, Js.*

---

*The listing of justices reflects their seniority status on this court as of the date of oral argument.

198

Argued January 11—officially released December 14, 2010

*John Q. Gale*, for the appellant (plaintiff).

*Dana B. Lee*, with whom, on the brief, was *Michael C. Conroy*, for the appellees (named defendant et al.).

*Jonathan C. Sterling*, with whom was *James M. Sconzo*, for the appellee (defendant town of West Hartford).

*Frederick O'Brien*, for the appellee (defendant town of Bloomfield).

*Opinion*

PALMER, J. The plaintiff, Selena Brooks, commenced this action against the defendants, Daniel Sweeney, an environmental sanitarian for the health district of the towns of Bloomfield and West Hartford (health dis-

trict),[1] Stephen Huleatt, Sweeney's supervisor and director of the health district, and the towns of Bloomfield and West Hartford, after she was arrested, pursuant to General Statutes § 19a-220,[2] for failing to repair a septic system that was leaking raw sewage onto her property. The plaintiff sought damages from Sweeney for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress and selective prosecution in violation of 42 U.S.C. § 1983.[3] The plaintiff sought damages from Huleatt for negligent supervision and selective prosecution in violation of 42 U.S.C. § 1983. The plaintiff also asserted direct liability and indemnification claims under General Statutes §§ 52-557n[4] and

---

[1] The health district is a regional health department serving the towns of Bloomfield and West Hartford, and was established pursuant to General Statutes § 19a-240 et seq.

[2] General Statutes § 19a-220 provides: "When any person refuses to obey a legal order given by a director of health, health committee or board of health, or endeavors to prevent it from being carried into effect, a judge of the Superior Court may issue his warrant to a proper officer or to an indifferent person, therein stating such order and requiring him to carry it into effect, and such officer or indifferent person shall execute the same."

[3] Title 42 of the United States Code, § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[4] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts

7-465,[5] respectively, against the towns of Bloomfield and West Hartford.[6] The trial court granted the defendants' motions for summary judgment on all claims, concluding that (1) the plaintiff's arrest was supported by probable cause, which operated as a complete bar to the plaintiff's common-law claims against Sweeney, (2) Huleatt was entitled to governmental immunity from liability for the plaintiff's negligent supervision claim, (3) Sweeney and Huleatt both were entitled to governmental immunity from liability for the plaintiff's § 1983 claims, and (4) the plaintiff could not prevail on her liability claims against the towns because those claims were derivative of her claims against Sweeney and Huleatt. On appeal,[7] the plaintiff contends that the trial court improperly granted the defendants' motions for summary judgment because genuine issues of material fact exist as to whether Sweeney had probable cause to arrest the plaintiff and because Sweeney and Huleatt are not entitled to governmental immunity. We reject

or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

[5] General Statutes § 7-465 provides in relevant part: "(b) Each town, city or borough which has joined with other towns, cities or boroughs to form a district department of health, pursuant to chapter 368f, or a regional planning agency, pursuant to chapter 127, shall jointly assume the liability imposed upon any officer, agent or employee of such district department of health or such regional planning agency, acting in the performance of his duties and in the scope of his employment, under, and in the manner and in accordance with the procedures set forth in, subsection (a) of this section. Such joint assumption of liability shall be proportionately shared by the towns, cities and boroughs in such district or regional planning agency, on the same basis that the expenses of such district are shared as determined under section 19a-243, or such regional planning agency as determined under section 8-34a."

[6] We hereinafter refer to the towns of Bloomfield and West Hartford collectively as the towns.

[7] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

these claims and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our disposition of this appeal. The plaintiff, an African-American, is the owner of a single-family home in Bloomfield. The plaintiff's home was built in 1982. In 1987, sewage from the septic system began leaking into the yard. At that time, James Matthews, a Caucasian neighbor,[8] experienced a similar problem with his septic system. In 1991, both Matthews and the plaintiff received letters from the town of Bloomfield informing them that their septic systems were in need of repair. In 1992, they contacted the town to discuss possible solutions to the problem. At that time, the town informed them that the sewage posed no immediate health risk. In light of this information, the plaintiff opted not to undertake the costly repairs that would be required to fix her septic system.

In January, 2002, the plaintiff's next-door neighbor, Jane Stone, complained to the health district that raw sewage was leaking from the plaintiff's septic system and that a foul odor was emanating from the plaintiff's property. Stone expressed concern that the plaintiff's septic system would adversely affect the sale of her property. Sweeney contacted the plaintiff to discuss the complaint. During several inspections of the property in early and late 2002, Sweeney observed sewage discharging from the plaintiff's septic fields into her yard in violation of §§ 19-13-B103c (f)[9] and 19-13-B1 (d)[10]

---

[8] Matthews' property abuts the plaintiff's property.

[9] Section 19-13-B103c (f) of the Regulations of Connecticut State Agencies provides: "No sewage shall be allowed to discharge or flow into any storm drain, gutter, street, roadway or public place, nor shall such material discharge onto any private property so as to create a nuisance or condition detrimental to health. Whenever it is brought to the attention of the local director of health that such a condition exists on any property, he shall investigate and cause the abatement of this condition."

[10] Section 19-13-B1 of the Regulations of Connecticut State Agencies provides in relevant part: "The following conditions are specifically declared to constitute public nuisances:

of the Regulations of Connecticut State Agencies, in addition to other provisions of Code of Ordinances of the town of Bloomfield. After each visit, Sweeney attempted to serve the plaintiff, by way of certified letter, with a notice of violation ordering her to remedy the septic system, but the postal service was unable to deliver the letters.

On June 27, 2003, during a reinspection of the plaintiff's property, Sweeney again observed raw sewage seeping from the ground. On July 2, 2003, he served the plaintiff with a notice of violation, which ordered her to repair the septic system by July 15, 2003. The plaintiff appealed that order to the appeals committee of the health district. On July 30, 2003, the appeals committee held a hearing at which it determined that the plaintiff's septic system constituted a nuisance and a health hazard. The committee gave the plaintiff sixty days to remedy the problem. At the hearing, members of the committee asked Sweeney whether any other properties in the vicinity of the plaintiff's property were experiencing septic problems. Sweeney responded that "none [was] at [that] time." Sweeney added that, since January, 2002, several attempts had been made to resolve the plaintiff's septic problem "amicably" but that those efforts had proven to be unsuccessful.

Thereafter, in October, 2003, the plaintiff hired a contractor to draw up a plan to repair her septic system, which was approved by the health district. Due to long periods of sustained inclement weather, however, the plan could not be implemented, and the health district granted the plaintiff a number of extensions. When work finally commenced at the end of May or early June, 2004, the contractor informed the plaintiff that,

* * *

"(d) The discharge or exposure of sewage . . . or any other organic filth into or on any public place in such a way that transmission of infective material may result thereby. . . ."

because of unanticipated conditions on the property, the plan that had been approved by the health district no longer was feasible and that repairing the septic system would be more complicated and expensive than originally anticipated. On June 4, 2004, the plaintiff telephoned Sweeney to inform him that she could not afford the repairs that were required to fix the septic system and that, in her view, the town of Bloomfield would have to install sewers. Sweeney responded that the plaintiff had until the end of June, 2004, to repair the septic system and advised her, as he had done on previous occasions, that her failure to make the necessary repairs could result in her arrest. In a letter dated June 9, 2004, Sweeney also informed the plaintiff that he had spoken to her contractor and that he had advised Sweeney that a code complying septic system design and installation "could be achieved." Sweeney concluded the letter by stating, "[a]t this time the property remains in violation of [town ordinances and state regulations] and further enforcement action will be taken against you until the violations are corrected."

On July 16, 2004, Sweeney prepared an affidavit in support of an application for a warrant for the plaintiff's arrest. In the affidavit, Sweeney stated that, on July 30, 2003, the plaintiff had been ordered by the health district to complete repairs to her septic system by October 1, 2003, which she had failed to do. He further stated that, on June 4, 2004, the plaintiff had advised him by telephone that she would not complete the repairs. The affidavit listed all of the outstanding health violations existing on the plaintiff's property due to the condition of the plaintiff's septic system. On July 29, 2004, after the plaintiff had failed to complete the repairs, the office of the state's attorney submitted an application for a warrant for the plaintiff's arrest.

On August 19, 2004, the health district approved a revised plan of repair for the septic system. Meanwhile,

a judge of the Superior Court issued a warrant for the plaintiff's arrest, and she was arrested on August 30, 2004. On October 5, 2004, the state nolled the criminal charges, and those charges subsequently were dismissed.

The plaintiff commenced this action in June, 2006, asserting claims of malicious prosecution and intentional and negligent infliction of emotional distress against Sweeney, and negligent supervision against Huleatt. She also asserted claims under 42 U.S.C. § 1983 against Sweeney and Huleatt, alleging that they had treated her differently from her Caucasian neighbor, Matthews, on the basis of her race and gender. Finally, she brought direct liability and indemnification claims pursuant to §§ 52-557n and 7-465, respectively, against the towns.

The defendants moved for summary judgment on all counts. They asserted that the arrest warrant and ensuing criminal charges were supported by probable cause, which is an absolute defense to the plaintiff's common-law tort claims. Sweeney asserted that his conduct in enforcing state and local health laws was not extreme and outrageous and, therefore, that the intentional infliction of emotional distress claim against him was insufficient as a matter of law. Sweeney further asserted that his enforcement of state and local health laws cannot serve as a basis for a negligent infliction of emotional distress claim and, moreover, that he is protected by governmental immunity from liability for that claim. Additionally, Sweeney and Huleatt asserted that the plaintiff's § 1983 claims were meritless and that they both were shielded from those claims by governmental immunity. Huleatt asserted that his supervision of Sweeney was not negligent and that he was shielded by governmental immunity from liability for that claim, as well. Finally, the towns asserted that they were entitled to judgment as a matter of law on the direct liability

and indemnification claims because those claims are derivative of the claims against Sweeney and Huleatt.

The trial court granted the defendants' motions for summary judgment. The court concluded that the malicious prosecution claim failed as a matter of law because the evidence established that the facts known to Sweeney when he submitted his affidavit in support of an application for the arrest warrant supported a finding of probable cause to believe that the plaintiff had violated an order of the health district. In reaching its conclusion, the court noted that, although the plaintiff had attempted to comply with the order, the fact remained that, as of July, 2004, she had not yet done so, and, furthermore, she had told Sweeney that she would not comply with the order and wanted the town of Bloomfield to install sewers. Although the trial court acknowledged the plaintiff's contention that she had made these statements out of frustration and that she eventually completed the repairs, the court concluded that those facts had no bearing on the question of whether the facts known to Sweeney when he prepared the affidavit in support of an application for the arrest warrant supported a finding of probable cause to believe that the plaintiff would not comply with the order.

Having concluded that the malicious prosecution claim failed because probable cause existed for the plaintiff's arrest, the trial court further concluded that the plaintiff's intentional and negligent infliction of emotional distress claims also must fail. Specifically, the court concluded that, although "being arrested and subject to prosecution may have been traumatic to the plaintiff, enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society. Subjecting a government official or employee to litigation for [the intentional] infliction of emotional

distress arising from a valid arrest would be contrary to public policy and inhibit the enforcement of the law.

\* \* \*

"The same public policy implications . . . come into play [with respect to the plaintiff's negligent infliction of emotional distress claim]: an official enforcing the law should not be held liable for improper acts supposedly committed in the course of obtaining an otherwise valid arrest."

Turning next to the plaintiff's § 1983 claims, the trial court observed that those claims were predicated on the equal protection clause and alleged both protected class and " 'class of one' "[11] theories of recovery. Before addressing the merits of the § 1983 claims, however, the court explained that it first was required to determine whether Sweeney and Huleatt were entitled to qualified immunity, because, if they were, the court lacked subject matter jurisdiction over those claims. The court further explained that, under federal law, the doctrine of qualified immunity shields government officials from civil actions arising out of their discretionary acts if such acts did not violate clearly established law, or it was objectively reasonable for the officials to believe that their actions did not violate clearly established law. Applying this standard to the undisputed facts, the trial court concluded that Sweeney and Huleatt were entitled to qualified immunity because it was objectively reason-

---

[11] "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. . . . The [United States] Supreme Court [has] affirmed the validity of such class of one claims [when] the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (Internal quotation marks omitted.) *C & H Associates Ltd. Partnership* v. *Stratford,* 122 Conn. App. 198, 204, 998 A.2d 833 (2010).

able for Sweeney to believe that his enforcement of the health code of the town of Bloomfield did not violate clearly established equal protection law. Specifically, the court concluded: "The undisputed facts show that the plaintiff's septic system had been leaking since approximately 1987. In 2003, Sweeney responded to a complaint from a neighbor that the plaintiff's system was leaking. Sweeney, pursuant to his duty to enforce the health code, worked with the plaintiff, giving her time to get the system fixed. The plaintiff stated that she would not or could not comply with the orders of the [h]ealth [d]istrict. Sweeney prepared an affidavit in support of [an application for] an arrest warrant, a judge signed the warrant, and the plaintiff was arrested for failure to comply with an order of the [h]ealth [d]istrict. The plaintiff states that Matthews' property had the same problem as hers, that she observed the problem at Matthews' property around the same time as these events and that she asked Sweeney why he was not enforcing the [health] code against Matthews. The evidence does not show that Sweeney knew Matthews was Caucasian; nor does it appear that any formal complaint was lodged against Matthews or that Matthews had refused to comply with an order of the [h]ealth [d]istrict.

"On the basis of these facts, it was objectively reasonable for a [government official] in Sweeney's position to believe that his enforcement of the health code in this situation did not violate the plaintiff's right to equal protection of the laws. Therefore, the court finds that qualified immunity applies to Sweeney's conduct." The court also concluded that Huleatt was entitled to qualified immunity because he had no more information about the enforcement issues involving Matthews and the plaintiff than Sweeney did.

Finally, with respect to the plaintiff's negligent supervision claim,[12] the court concluded that the plaintiff's

---

[12] "Under Connecticut law, an employer may be held liable for the negligent supervision of employees. See *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 500,

allegations of negligence involved the performance of discretionary acts and that, under well established precedent, Huleatt was entitled to governmental immunity from liability for those acts unless the plaintiff could establish that an exception to that immunity applied. The court then rejected the plaintiff's contention that the " 'identifiable person-imminent harm' " exception to governmental immunity[13] applied to Huleatt's conduct. Specifically, the court found that Huleatt's failure to stop Sweeney from preparing the affidavit in support of an application for the arrest warrant "could hardly be said to create an imminent risk of arrest. Prosecutors, and then judges, do not review warrant applications on a set schedule. Police officers do not always attempt to serve arrest warrants as soon as they know about them. In this case, the plaintiff was not arrested until [thirty-two] days after Sweeney submitted the [affidavit in support of an application for the] arrest warrant. The court finds, as a matter of law, that any 'harm' [that the] plaintiff could conceivably have been subjected to, as a result of Sweeney's or Huleatt's conduct, was not 'imminent.' " In light of its determination that Sweeney and Huleatt were entitled to judgment as a matter of law as to all claims, the trial court concluded that the

537 A.2d 527 (1988) (recognizing independent claim of direct negligence against employer who failed to exercise reasonable care in supervising employee); [see also] *Roberts* v. *Circuit-Wise, Inc.*, 142 F. Sup. 2d 211, 214 (D. Conn. 2001) (in negligent supervision action, plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had [a] duty to supervise); [cf.] *Shore* v. *Stonington*, 187 Conn. 147, 155, 444 A.2d 1379 (1982) (liability in any situation [in which] a third party is injured by an employer's own negligence in failing to select an employee fit or competent to perform the services of employment)." (Internal quotation marks omitted.) *Seguro* v. *Cummiskey*, 82 Conn. App. 186, 191, 844 A.2d 224 (2004).

[13] "[W]hen the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable [or foreseeable] person to imminent harm, the public officer is not entitled to qualified immunity." (Internal quotation marks omitted.) *Fleming* v. *Bridgeport*, 284 Conn. 502, 532, 935 A.2d 126 (2007).

towns also were entitled to judgment as a matter of law because the plaintiff's claims against them were derivative of her claims against Sweeney and Huleatt. This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the plaintiff claims that the trial court incorrectly concluded that no genuine issues of material fact exist as to whether probable cause existed for the plaintiff's arrest and, therefore, improperly granted Sweeney's motion for summary judgment on the malicious prosecution and intentional and negligent infliction of emotional distress claims. The plaintiff also claims that the trial court incorrectly concluded that (1) Sweeney and Huleatt are entitled to qualified immunity from liability for the plaintiff's § 1983 claims, (2) the identifiable person-imminent harm exception to governmental immunity did not apply to the plaintiff's negligent supervision claim against Huleatt, and (3) there is no basis for liability against the towns. We conclude that the plaintiff's arrest was supported by probable cause and, therefore, that Sweeney is entitled to judgment as a matter of law on the malicious prosecution and intentional and negligent infliction of emotional distress claims. We further conclude that both Sweeney and Huleatt are entitled to qualified immunity from liability for the plaintiff's § 1983 claims. In light of those conclusions, we also conclude that Huleatt is entitled to judgment as a matter of law on the negligent supervision claim and that the towns are entitled to judgment as a matter of law on the liability claims because they are derivative of the claims against Sweeney and Huleatt.

I

We first address the plaintiff's claim that the trial court improperly granted Sweeney's motion for summary judgment on the malicious prosecution and intentional and negligent infliction of emotional distress

claims on the ground that Sweeney's affidavit was supported by probable cause.[14] The plaintiff contends that, in reaching its determination, the trial court improperly resolved a disputed factual issue regarding whether Sweeney, at the time he prepared his affidavit, believed that the plaintiff would not comply with the order. We are not persuaded.

The following legal principles guide our analysis of the plaintiff's claim. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc. v. 523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009).

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal

---

[14] We note that the plaintiff does not challenge the trial court's determination that the existence of probable cause defeats her claims of malicious prosecution and intentional and negligent infliction of emotional distress. We therefore limit our analysis to whether the trial court properly determined that probable cause existed for the plaintiff's arrest.

proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. . . . The law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation . . . but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law." (Citation omitted; internal quotation marks omitted.) *Bhatia v. Debek*, 287 Conn. 397, 404–405, 948 A.2d 1009 (2008).

"Probable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he has reasonable grounds for prosecuting an action. . . . Mere conjecture or suspicion is insufficient. . . . Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable. . . . Although want of probable cause is negative in character, the burden is [on] the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding. . . . The existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law." (Citation omitted; internal quotation marks omitted.) Id., 410–11.

Applying these principles to the present case, and viewing the evidence in the light most favorable to the plaintiff, we conclude that it is abundantly clear that the plaintiff has failed to meet her burden of establishing that Sweeney lacked probable cause to seek her arrest

in July, 2004. Criminal proceedings against the plaintiff were instituted pursuant to § 19a-220, which provides: "When any person refuses to obey a legal order given by a director of health, health committee or board of health, or endeavors to prevent it from being carried into effect, a judge of the Superior Court may issue his warrant to a proper officer or to an indifferent person, therein stating such order and requiring him to carry it into effect, and such officer or indifferent person shall execute the same." General Statutes § 19a-220; see also General Statutes § 19a-36 (a) (7) ("[a]ny person who violates any provision of the Public Health Code shall be fined not more than one hundred dollars or imprisoned not more than three months, or both"); General Statutes § 19a-230 ("[a]ny person who violates any provision of . . . chapter [368e of the General Statutes] or any legal order of a director of health or board of health, for which no other penalty is provided, shall be fined not more than one hundred dollars or imprisoned not more than three months or both").

This court has observed that "[t]he abatement of nuisances and the enforcement of the public health code by municipal health officials . . . [is] authorized by [what is now § 19a-220] . . . . The promulgation of public health . . . and the regulation and abatement of uses of property and nuisances [that] threaten the health and safety of the general public constitute legitimate subjects for the exercise of the state's police power. This power comprehends a system of internal regulation . . . to enable people to live together in close association, preserving to each his individual rights and privileges but so controlling them that their enjoyment is reasonably consistent with the enjoyment of like rights and privileges by others." (Internal quotation marks omitted.) *DeMello* v. *Plainville*, 170 Conn. 675, 678–79, 368 A.2d 71 (1976).

In the present case, the undisputed evidence establishes that, on July 30, 2003, the plaintiff was ordered to complete repairs to her septic system by October 1, 2003, which she failed to do. As of July, 2004, the plaintiff still had not complied with the July 30, 2003 order, even though she had been given a number of extensions of time in which to do so. In light of the foregoing, it is abundantly clear that Sweeney had probable cause to believe, when he prepared his affidavit in support of an application for the arrest warrant, that the plaintiff either would not or could not comply with the order. Indeed, according to the plaintiff's own deposition testimony, she *told* Sweeney, in early June, 2004, that she could not comply with the order.

The plaintiff nevertheless contends that there is a disputed factual issue with regard to whether she refused to comply with the order and, therefore, with regard to whether Sweeney had probable cause to seek her arrest under § 19a-220. Specifically, the plaintiff contends that, notwithstanding her statements to Sweeney in early June, 2004, by the time Sweeney prepared the affidavit supporting her arrest on July 16, 2004, he was aware that she was exploring ways to finance the repairs, and that her engineer was actively engaged in drawing up a new plan for completing the repairs. We reject the plaintiff's claim. Whatever the plaintiff's intentions might have been in July, 2004, the fact remains that, on the day that Sweeney prepared the affidavit, it was objectively reasonable for him to believe that the plaintiff had refused to obey an outstanding order of the health district—whether for financial or other reasons—and that, on the basis of his experiences with the plaintiff over the preceding two years, she would continue to do so until more aggressive enforcement measures were taken.[15]

---

[15] The plaintiff also contends, in reliance on *State* v. *Cooney*, 24 Conn. Sup. 242, 189 A.2d 511 (1962), that there was no probable cause for her arrest for refusing to obey an order of the health district because the order

## II

We next address the plaintiff's claim that the trial court incorrectly concluded that Sweeney and Huleatt are entitled to qualified immunity from liability for her § 1983 claims on the ground that it was objectively reasonable for Sweeney to believe that his conduct in enforcing state regulations and local ordinances did not violate the plaintiff's clearly established rights under the equal protection clause of the fourteenth amendment to the United States constitution. In particular, the plaintiff

was invalid under General Statutes § 19a-206 (a), which provides in relevant part: "Town, city and borough directors of health or their authorized agents shall, within their respective jurisdictions, examine all nuisances and sources of filth injurious to the public health, cause such nuisances to be abated or remediated and cause to be removed all filth which in their judgment may endanger the health of the inhabitants. . . ." Specifically, the plaintiff contends that the court in *Cooney* interpreted General Statutes (1958 Rev.) § 19-79, the predecessor to § 19a-206 (a), as authorizing health inspectors to order the abatement of a nuisance—in *Cooney*, the alleged nuisance was a pile of horse manure—only if the nuisance is first determined to constitute a danger to public health. *Cooney*, however, bears no relevance to the present case in light of the statutory and regulatory scheme that now governs our analysis of the plaintiff's claims. General Statutes § 19a-207 provides in relevant part that "[t]he local director of health or his authorized agent or the board of health shall enforce or assist in the enforcement of the Public Health Code and such regulations as may be adopted by the Commissioner of Public Health. . . ." Section 19-13-B1 (d) of the Regulations of Connecticut State Agencies, which is part of the state public health code, provides that "[t]he discharge or exposure of sewage . . . or any other organic filth into or on any public place in such a way that transmission of infective material may result" constitutes a public nuisance. Section 19-13-B2 (a) of the state public health code, in turn, authorizes "[a]ny local director of health, upon information of the existence of [such] nuisance . . . [to] order in writing for the abatement of the same." Finally, § 19-13-B103c (f) of the state public health code, which was promulgated approximately twenty years after *Cooney*, provides: "No sewage shall be allowed to discharge or flow into any storm drain, gutter, street, roadway or public place, nor shall such material discharge onto any private property so as to create a nuisance or condition detrimental to health. Whenever it is brought to the attention of the local director of health that such a condition exists on any property, he shall investigate and cause the abatement of this condition." Thus, there is no question that the order of the health district was authorized under §§ 19-13-B1 (d), 19-13-B2 (a) and 19-13-B103c (f) of the state public health code.

contends that the trial court incorrectly determined that Sweeney's conduct was objectively reasonable for equal protection purposes because the plaintiff and Matthews were not similarly situated, and, consequently, there was no reason for Sweeney to believe that his conduct toward Matthews had any bearing on the propriety of his conduct toward the plaintiff. The plaintiff claims that the trial court, in reaching this determination, ignored several important facts that, when considered in the light most favorable to her, give rise to genuine issues of disputed fact as to whether she and Matthews were, indeed, similarly situated.[16] Contrary to the plaintiff's contention, she has failed to meet her burden of demonstrating the existence of any genuine issue of material fact with respect to whether she and Matthews were similarly situated. Consequently, the trial court correctly determined that Sweeney and Huleatt are entitled to qualified immunity.[17]

---

[16] Specifically, the plaintiff claims that the trial court ignored the following facts: (1) her septic system had been in the same disrepair for at least thirteen years; (2) the town of Bloomfield informed her in 1992 that her septic system was not a health risk; (3) prior to 2003, she never was ordered to repair her septic system; (4) she was the first person that either Sweeney or Huleatt ever had sought to have arrested; (5) the town did not have a "housing code board of appeals" when the complaint against her was lodged in 2002; (6) the appeals committee of the health district determined that the septic system presented no immediate danger to the public health; (7) she never stopped working with the health district to fix her system, and had engaged, with the district's approval, contractors to design a compliant system; (8) the failure to repair the system in June, 2004, was not her fault but the fault of overlooked circumstances related to the property; (9) Sweeney did not need to pursue the plaintiff's arrest, and he acknowledged that, even if he had been aware of other enforcement options, he still would have sought her arrest; and (10) Matthews, a male, Caucasian neighbor, had experienced similar problems with his septic system, but Sweeney, also a Caucasian male, took no action against him.

[17] The plaintiff also claims that Sweeney and Huleatt violated her due process right not to be arrested but upon probable cause. Because we previously have concluded that probable cause existed for the plaintiff's arrest, we reject this claim.

The following well established legal principles guide our analysis. "[A] claim for qualified immunity from liability for damages under § 1983 raises a question of federal law . . . and not state law. Therefore, in reviewing these claims of qualified immunity we are bound by federal precedent, and may not expand or contract the contours of the immunity available to government officials." (Citation omitted; internal quotation marks omitted.) *Schnabel* v. *Tyler*, 230 Conn. 735, 742–43, 646 A.2d 152 (1994).

"Under federal law, the doctrine of qualified immunity shields officials from civil damages liability for their discretionary actions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson* v. *Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Qualified immunity is an immunity from suit rather than a mere defense to liability and, therefore, protects officials from the burdens of litigation for the choices that they make in the course of their duties. . . . *Mitchell* v. *Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Thus, the United States Supreme Court has recognized qualified immunity for government officials [when] it [is] necessary to preserve their ability to serve the public good or to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service. *Wyatt* v. *Cole*, 504 U.S. 158, 167, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). Whether an official is entitled to qualified immunity presents a question of law that must be resolved de novo on appeal. *Elder* v. *Holloway*, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994).

"A court required to rule [on] the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the

initial inquiry. *Saucier* v. *Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable. Id. . . .

"Under the *Saucier* test, a court first is required to articulate the elements of a constitutional violation and, taking the facts in the light most favorable to the plaintiff, determine whether there would be a violation of the plaintiff's constitutional rights under those facts. [Id.] The principles set forth with regard to the right alleged to have been violated set the groundwork for and inform the second inquiry. Id. Under the second inquiry, the court must determine not merely whether the state official conducted, for example, a reasonable search or seizure because qualified immunity has a further dimension. Id., 205. Rather, a court must also determine for purposes of qualified immunity whether the officer made a reasonable mistake as to the legal constraints on his behavior under those circumstances. Id. As the Supreme Court stated in *Saucier*, the essence of the second inquiry is that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . Id., 202.

"The Second Circuit has further refined the second inquiry under *Saucier* . . . . A [governmental] defendant will be entitled to qualified immunity if either (1) his actions did not violate clearly established law or

(2) it was objectively reasonable for him to believe that his actions did not violate clearly established law. *Iqbal* v. *Hasty*, 490 F.3d 143, 152 (2d Cir. 2007). In determining whether a right was clearly established, the court must assess whether the contours of the right [were] sufficiently clear in the context of the alleged violation such that a reasonable official would understand that what he [was] doing violate[d] that right. . . . To that end, the court should consider what a reasonable officer in the defendant's position would have known about the lawfulness of his conduct, not what a lawyer would learn or intuit from researching case law. . . . Furthermore, the court need not identify legal precedent addressing an identical factual scenario to conclude that the right is clearly established. . . . Id." (Citation omitted; internal quotation marks omitted.) *Fleming* v. *Bridgeport*, 284 Conn. 502, 517–19, 935 A.2d 126 (2007).

As we previously indicated, the plaintiff's § 1983 claims are predicated on class of one and protected class theories of recovery. "The [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment to the United States [c]onstitution is essentially a direction that all persons similarly situated should be treated alike. . . . A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 362, 977 A.2d 636 (2009).

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . the equal protection guarantee also extends to individuals who allege

no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. . . . The [United States] Supreme Court [has] affirmed the validity of such class of one claims [when] the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. . . . [See *Willowbrook*] v. *Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000); *Kelo* v. *New London*, 268 Conn. 1, 107, 843 A.2d 500 (2004), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005)." (Citation omitted; internal quotation marks omitted.) *C & H Associates Ltd. Partnership* v. *Stratford*, 122 Conn. App. 198, 204, 998 A.2d 833 (2010).

"[T]he analytical predicate [of an equal protection claim] is a determination of who are the persons . . . similarly situated." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 158, 957 A.2d 407 (2008). "[T]he requirement imposed [on] [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances [in which] persons situated similarly in all *relevant* aspects were treated differently . . . ." (Emphasis in original; internal quotation marks omitted.) *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 672, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001).

Class of one plaintiffs, however, "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . This is because the existence of persons in similar circumstances who received more favorable treatment than the plaintiff in a class-of-one case is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an

improper purpose—whether personal or otherwise—is all but certain. . . . Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that

"(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." (Citations omitted; internal quotation marks omitted.) *Clubside, Inc.* v. *Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

Applying these principles to the present case, we conclude that the plaintiff has failed to meet her burden of establishing that she and Matthews were similarly situated, either under a class of one theory or under a protected class theory. Although the plaintiff cites to numerous facts in the record that she maintains support her claim, only the fact that Matthews is a male Caucasian who previously had experienced problems with his septic system that were similar to the problems that the plaintiff experienced at the time of her arrest, arguably supports her claim. As the trial court observed, however, although there is evidence that Matthews experienced problems with his septic system in 1992, the record is devoid of evidence that he experienced problems after that time, that he ever was cited for a health code violation or that he ever failed to comply with an order of the health district. Moreover, there is no evidence that any of his neighbors ever filed a complaint against him with the health district, as the plaintiff's neighbor had done in the plaintiff's case. Indeed, Sweeney testified at the hearing before the appeals committee that no other homeowners in the vicinity of the plaintiff's property were experiencing septic problems at the time of the hearing in 2003. If this statement had been untrue, or if a complaint actu-

ally had been lodged against Matthews, we would expect the plaintiff to have adduced such evidence in the trial court. See, e.g., *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578–79, 573 A.2d 699 (1990) ("[The party opposing a motion for summary judgment] must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." [Citations omitted; internal quotation marks omitted.]). In the absence of such evidence establishing that she and Mathews were similarly situated—in other words, in the absence of a showing that the circumstances pertaining to the septic system problems that the plaintiff and Matthews encountered were substantially similar in all material respects—the plaintiff has failed to establish an essential predicate of her equal protection claim, and, consequently, Sweeney and Huleatt both are entitled to qualified immunity from liability for her § 1983 claims.

## III

Lastly, we address the plaintiff's contention that the trial court improperly determined that Huleatt is shielded by governmental immunity from liability for the plaintiff's negligent supervision claim. That claim, according to the plaintiff, is based on Huleatt's "failure to prevent Sweeney from seeking [the] plaintiff's arrest." As we previously noted, the trial court rejected the plaintiff's contention that the identifiable person-imminent harm exception to the doctrine of governmental immunity applied to Huleatt's conduct.[18] On appeal, the plaintiff challenges that determination. We conclude, however, that it is unnecessary to decide that

---

[18] The plaintiff does not challenge the trial court's finding that Huleatt's actions in hiring, training and supervising Sweeney were discretionary. Thus, the plaintiff can prevail on this claim only if she can demonstrate that the identifiable person-imminent harm exception to qualified immunity applies.

issue because, even if it is assumed that the identifiable person-imminent harm exception applies to Huleatt's conduct, the plaintiff's claim of negligent supervision still must fail as a matter of law because Huleatt's conduct was not negligent. Simply put, because the plaintiff's arrest was supported by probable cause and did not amount to selective enforcement of the law in violation of the equal protection clause, Huleatt owed no duty to the plaintiff to prevent her lawful arrest. See *Henshaw* v. *Doherty*, 881 A.2d 909, 919 (R.I. 2005) (rejecting negligent supervision claim because, in light of court's prior conclusion that arrest was supported by probable cause "the state cannot be liable for negligent supervision").

As we previously indicated, the plaintiff's direct liability and indemnification claims against the towns are derivative of her claims against Sweeney and Huleatt. In light of our conclusion that Sweeney and Huleatt are entitled to judgment as a matter of law on all claims, the towns also are entitled to judgment as a matter of law on the claims asserted against them.

The judgment is affirmed.

In this opinion the other justices concurred.

See, e.g., *Fleming* v. *Bridgeport*, supra, 284 Conn. 531–33 ("[A] municipal official is otherwise generally immune from liability for discretionary—as opposed to ministerial—acts, unless the plaintiff can show that the circumstances fit under one of three exceptions . . . [one of which involves] circumstances [that] make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . Under our case law, when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable [or foreseeable] person to imminent harm, the public officer is not entitled to qualified immunity. . . . Foreseeability is the touchstone of our analysis in determining whether a public officer can be liable for his discretionary acts under this exception. . . . Thus, we will permit official liability for discretionary acts only if the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . The issue of governmental immunity is a question of law, over which we exercise de novo review." [Citations omitted; internal quotation marks omitted.]).