STEVEN SZEKERES ET AL. *v.* JOYCE
SZEKERES ET AL.
(AC 30337)
(AC 30338)

STEVEN SZEKERES ET AL. *v.* CHAKER
DRIDI ET AL.
(AC 30339)

Bishop, Robinson and Schaller, Js.

Argued December 2, 2010—officially released March 1, 2011

*Thomas J. Weihing,* with whom were *Virginia C. Foreman,* and, on the brief, *Janice L. Rosenfeld* and

*John T. Bochanis*, for the appellants (plaintiffs in all three cases).

*Zbigniew J. Rozbicki* and *William J. Melley III*, for the appellees (defendant Joyce Szekeres et al. in AC 30337 and AC 30338).

*William J. Melley III*, for the appellees (defendant Chaker Dridi et al. in AC 30339).

*Opinion*

BISHOP, J. These consolidated appeals stem from a family dispute regarding the use and occupancy and ownership of certain real property. The plaintiffs, Steven Szekeres and Denise Miller, appeal from the judgments of the trial court, following a jury trial, in favor of the various defendants, Joyce Szekeres, Chaker Dridi and Stephanie Dridi.[1] We affirm the judgments of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant to our resolution of the plaintiffs' appeals. Until approximately February 1, 2000, Steven Szekeres and his wife, Miller, resided at 39 Hillside Lane, Monroe, which was owned by Steven Szekeres' mother, Joyce Szekeres. Steven Szekeres resided in that home pursuant to an agreement with his mother, who resided primarily in Florida since the time of her retirement in the mid-1990s. On September 14, 1999, however, the plaintiffs were served with an eviction notice. On November 22, 1999, the parties entered into a stipulated agreement providing that the plaintiffs would vacate the premises, with a stay of execution through February 1, 2000.

Stephanie Dridi, Steven Szekeres' sister and Joyce Szekeres' daughter, and Stephanie Dridi's husband,

---

[1] We refer in this opinion to Joyce Szekeres, Chaker Dridi and Stephanie Dridi collectively as the defendants. We will refer to them individually by name when necessary.

Chaker Dridi, resided in West Hartford. On September 19, 1999, the plaintiffs went to the Dridis' residence in West Hartford to retrieve some tools that the Dridis had borrowed from Steven Szekeres. The Dridis, along with Joyce Szekeres, met Steven Szekeres and his wife on the front lawn where a verbal altercation ensued. Stephanie Dridi called the police, and the plaintiffs left the premises with no arrests being made.

Subsequently, Stephanie Dridi went to the West Hartford police station and spoke with the victim's advocate, Denise C. Schaeffer. Stephanie Dridi told Schaeffer that she was concerned because Steven Szekeres had made threats against the defendants in the past and she knew that he had guns. Schaeffer then invited Joyce Szekeres to come to the police station to speak with her. Joyce Szekeres told Schaeffer that Steven Szekeres had been troubled for a long time, but that the incident on September 19, 1999, made her fearful because he appeared to be getting increasingly violent with her. She also told Schaeffer that Steven Szekeres owned guns and that he had threatened her in the past. Consequently, on November 12, 1999, Steven Szekeres was arrested in connection with the incident that occurred on September 19, 1999, and was charged with assault of a victim sixty or older in the third degree, threatening and breach of the peace. Steven Szekeres pleaded no contest to the breach of the peace charge and, on November 30, 1999, the court issued an order that neither the plaintiffs nor the defendants were to have any contact with each other.

On February 1, 2000, at the request of Joyce Szekeres, the Dridis went to the Monroe home. On their arrival, they saw that the driveway had not been shoveled and that there were no footprints or tire marks in the snow. They discovered a very large ice accumulation where it appeared that an outdoor faucet had been left in the open position. In the back of the house, they noticed

that a number of windows had been left open despite the cold temperatures. After Stephanie Dridi gained access to the house by breaking a window in the kitchen door, she discovered that doors had been nailed shut with two-by-four boards, the heat was set to its highest temperature setting, wallpaper had been randomly torn from the walls, fixtures were missing, the kitchen wall had a large handwritten message on it, a washing machine was missing, feces were on the floor, and the house was littered with trash and smelled of urine. There were also three cats caged in the garage. Stephanie Dridi called the Monroe police to report the damage and called the animal control officer to tend to the cats.

Shortly after the police arrived, the plaintiffs arrived with a moving van to retrieve their remaining items, including the cats. The police officers told the plaintiffs that they could remove belongings from the garage only and that the Dridis would remain inside the house. At some point, while retrieving his items, Steven Szekeres climbed a ladder that led to the room in the house in which the Dridis were waiting. Although Steven Szekeres alleged that Chaker Dridi assaulted him, the police officers did not witness any injury to support that allegation. Steven Szekeres was arrested and charged with disorderly conduct for failing to obey the police order to limit his presence to the garage. Following a trial, Steven Szekeres was found not guilty of disorderly conduct.

On the basis of the foregoing facts, the plaintiffs instituted three legal actions against the defendants in the Superior Court. Additionally, the plaintiffs instituted two federal actions in which the defendants were named. The federal actions were dismissed, and the three Superior Court cases were consolidated for purposes of a single jury trial. On June 5, 2008, the jury returned verdicts in each of the actions, from which

the plaintiffs have appealed. We address each of the appeals in turn.

## I

## AC 30337

On March 7, 2000, the plaintiffs filed a complaint in housing court in Bridgeport, against the defendants, alleging forcible entry and detainer, as well as illegal lockout and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] The defendants filed an answer and special defenses alleging that (1) the premises had been abandoned, (2) the lease had expired, (3) nuisance and (4) fraud. Joyce Szekeres also filed a counterclaim alleging wilful and malicious destruction in count one, and statutory theft in count two. The plaintiffs filed a reply to the special defenses, as well as an answer to the counterclaim.

The housing matter was transferred to the regular civil docket in the Fairfield judicial district on March 29, 2006. The three consolidated cases were tried to a jury. The court directed a verdict against the plaintiffs as to their CUTPA claim. At the conclusion of trial, the jury returned verdict forms and interrogatories to the court. The jury found in favor of the defendants on the remaining counts of the plaintiffs' complaint, namely, the counts alleging forcible entry and detainer, illegal lockout and conversion. As to the counterclaim, the jury found in favor of Joyce Szekeres on count one, which alleged wilful and malicious destruction of property, and awarded her damages of $35,000. The jury found in favor of the plaintiffs on Joyce Szekeres' statutory theft claim. This appeal followed.

---

[2] The plaintiffs' original complaint also alleged assault and battery, but they ultimately withdrew that count.

A

In this appeal, the plaintiffs first claim that the jury's verdicts regarding forcible entry and illegal lockout and detainer, conversion, and wilful and malicious destruction of property were against the weight of the evidence. In essence, the plaintiffs claim that the evidence in support of their position was so compelling that the jury could not have found against them. We view this, then, as a sufficiency of evidence claim. "[T]he standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 645–46, 904 A.2d 149 (2006).

1

As to the plaintiffs' claim for forcible entry and illegal lockout and detainer, the plaintiffs cite to General Statutes § 47a-43 (a), which provides: "When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of

the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court." In their brief to this court, the plaintiffs argue that "there was compelling evidence and testimony that would have supported a finding for the plaintiffs." As noted, however, that is not the standard by which we review the jury's verdict. Rather, we examine the record to determine if there is evidence upon which the jury could reasonably have based its verdict.

The defendants raised three special defenses, on which the court instructed the jury, namely, abandonment, entry pursuant to a court order and emergency. Here, although there was evidence that the Dridis entered the house by breaking a window in the kitchen door and that they changed the locks, there was also evidence from which the jury could have determined that the plaintiffs had abandoned the property. In addition to the facts that the windows were left open despite the frigid temperatures, the thermostat was set on its highest setting, and there were trash and feces strewn about the house, two neighbors testified that they had seen no signs of occupancy for some time. They further testified that there were no tire tracks or footprints in the snow, and that testimony was corroborated by Stephanie Dridi's observation. Although the plaintiffs disputed this testimony by asserting that the driveway had, in fact, been cleared of snow, it was within the jury's province to credit or discredit that evidence. Additionally, there was evidence presented that the windows in the house were open despite the frigid temperatures and that the outside faucet had been left on for some time. On this basis, the jury could have found that the Dridis' entry into the house was valid on the basis of

an emergency. On the basis of the foregoing, we cannot conclude that the jury's verdict was against the weight of the evidence.[3]

## 2

The plaintiffs also contend that the evidence did not support the jury's finding against them on their claim of conversion. "[C]onversion is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm." (Internal quotation marks omitted.) *Lawton* v. *Weiner*, 91 Conn. App. 698, 718, 882 A.2d 151 (2005).

The plaintiffs testified that the actions of the defendants in locking them out of the house deprived them of the opportunity to retrieve some of their personal property. Stephanie Dridi testified, however, that there was nothing remaining in the house that belonged to the plaintiffs or that was of any value. Because there was evidence that none of the plaintiffs' belongings remained at the residence, the jury was free to credit that testimony and return a verdict against the plaintiffs on their conversion count.

## 3

The plaintiffs also contend that the jury's finding that the plaintiffs wilfully and maliciously destroyed the property was not supported by the evidence. In their appellate brief, the plaintiffs claim that there was no evidence that the parties did anything intentionally and that, in fact, there was no evidence that Miller committed any acts that reasonably could be construed as destruction of property. The plaintiffs assert that there was no damage done to the property at all. In support of their position, the plaintiffs testified, as a justification

---

[3] We note that the jury was not required to indicate which, if any, of the defendants' special defenses it credited in reaching its verdict.

for the state of disrepair of the home, that renovations were being made to the home. They argue that the only testimony that there was any destruction to the property came from Stephanie Dridi. Again, however, the plaintiffs are asking this court to weigh the evidence, and they ignore the well established principle that the jury may credit or discredit any of the evidence and testimony presented at trial. Thus, the jury was free to discredit the testimony of the plaintiffs and credit that of Stephanie Dridi. Additionally, the plaintiffs ignore the testimony of Chaker Dridi, who also testified as to the damage to the property, and Lois Zandy, a real estate agent, whose testimony regarding the damage to the property essentially mirrored the testimony of the Dridis. Miller's father also testified that he helped his daughter and Steven Szekeres move at the end of January, 1999, and he observed torn wallpaper and graffiti on the wall. The jury reasonably could have concluded that the observations of those witnesses were not consistent with the plaintiffs' assertion that they were renovating the property, but instead, that they had damaged the property.[4] Accordingly, we cannot conclude that the jury's verdict was not supported by the evidence.

### B

The plaintiffs also claim that the court improperly directed a verdict against them as to their CUTPA claim. We disagree.

"We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a

---

[4] At oral argument, the plaintiffs' counsel conceded that intent could have been inferred by the type of damage that was done, i.e., graffiti on the walls, torn wallpaper, and trash and feces strewn about.

favorable verdict." (Internal quotation marks omitted.) *C & H Associates Ltd. Partnership* v. *Stratford,* 122 Conn. App. 198, 203, 998 A.2d 833 (2010).

"[General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness." (Internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.,* 296 Conn. 315, 350, 994 A.2d 153 (2010). "Whether the defendant is subject to CUTPA is a question of law, not fact." (Internal quotation marks omitted.) *Muniz* v. *Kravis,* 59 Conn. App. 704, 712, 757 A.2d 1207 (2000). "[W]hether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks

omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 228, 990 A.2d 326 (2010).

The defendants moved for a directed verdict, claiming that this case does not involve a business practice, but, rather, it simply concerns a mother who owns a house from which she is seeking to evict her son. The plaintiffs objected, claiming that there was a business relationship between the plaintiffs and Joyce Szekeres in that the plaintiffs were tenants of Joyce Szekeres. In directing a verdict in favor of the defendants on the CUTPA claim, the court reasoned that "it does not rise to the level of a trade or business practice that's covered by [CUTPA] . . . ."

In support of their position that the court improperly directed a verdict on their CUTPA count, the plaintiffs cite to *Conaway* v. *Prestia*, 191 Conn. 484, 464 A.2d 847 (1983), for the proposition that a landlord-tenant relationship can be the basis for such a claim. Although we acknowledge the basic principle that a landlord-tenant relationship can provide the basis for a CUTPA action, the facts in *Conaway* are readily distinguished from those at hand. In *Conaway*, our Supreme Court held that the defendants' conduct constituted unfair or deceptive acts in violation of CUTPA in that the defendants clearly had the responsibility for obtaining certificates of occupancy, and their collection of rent without those certificates offended the public policy embodied in General Statutes § 47a-57 of the Landlord Tenant Act of ensuring minimum standards of housing safety and habitability. Id., 493.

Here, the evidence revealed that Joyce Szekeres allowed her son, Steven Szekeres, to live in her home where Steven Szekeres had resided for his entire life, and that he paid her rent in accordance with a verbal agreement.[5] "Not every relationship, even assuming a

---

[5] We note that there was no evidence presented to indicate a business or landlord-tenant relationship between the plaintiffs and the Dridis.

landlord-tenant one, comes within the terms of CUTPA. There must be some nexus with a public interest, some violation of a concept of what is fair, some immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy." *Muniz* v. *Kravis*, supra, 59 Conn. App. 715. An informal and familial, not to mention singular, situation such as the one at hand cannot reasonably be construed as a trade or business practice within the meaning of CUTPA. Accordingly, the court properly directed a verdict as to the plaintiffs' CUTPA claim.[6]

## II

## AC 30338

On April 15, 2004, the plaintiffs filed another complaint against Joyce Szekeres and Stephanie Dridi alleging slander, intentional infliction of emotional distress and negligent infliction of emotional distress. On January 26, 2007, Joyce Szekeres and Stephanie Dridi filed an answer and special defenses, alleging that (1) the claims were barred by the statute of limitations, (2) the statements were truthful, (3) there was a superseding or intervening cause of third parties and (4) any damages were proximately and directly caused by Steven

[6] The plaintiffs also claim that the jury charge and the verdict form and interrogatories were confusing, ambiguous and prejudicial and that they were improper in that they combined the two plaintiffs with respect to the issues of liability and damages. The defendants contend, however, and we agree, that the plaintiffs' claims are not preserved in that they did not take exception to the court's instructions to the jury, nor did they object to the verdict form and interrogatories provided to the jury. "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury." Practice Book § 42-16. Because the plaintiffs failed to preserve these claims, we decline to address them. See *State* v. *Jay*, 124 Conn. App. 294, 310 and n.8, 4 A.3d 865 (2010).

Szekeres as a result of his illegal acts and conduct. The plaintiffs filed an answer to the special defenses on January 30, 2007. As noted, the three consolidated cases were tried to a jury. The court directed a verdict against the plaintiffs as to their claim for intentional infliction of emotional distress. At the conclusion of trial, the jury returned verdict forms and interrogatories to the court and found in favor of Joyce Szekeres and Stephanie Dridi on the remaining counts of the plaintiffs' complaint. This appeal followed.

A

In this appeal, the plaintiffs claim that the evidence presented at trial did not support the jury's verdict. In reviewing these claims, we must determine whether the jury reasonably could have concluded as it did. See part I A of this opinion.

In this action, the plaintiffs' claims for negligent infliction of emotional distress and slander are based on representations made by Joyce Szekeres and Stephanie Dridi to the victim's advocate that Steven Szekeres owned a handgun and had threatened them with it. The plaintiffs also alleged that Joyce Szekeres falsely and maliciously told a police detective that Steven Szekeres had previously put that gun to his own head while it was loaded. Consequently, the plaintiffs alleged, the police searched the plaintiffs' residence for that handgun, resulting in emotional distress. The police did not find a handgun at the plaintiffs' residence.

1

To prevail on a claim of negligent infliction of emotional distress, a plaintiff is required to prove that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or

bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003). Here, Steven Szekeres testified that it was "traumatic" when the police searched his house. He also argues in his brief that, because Joyce Szekeres and Stephanie Dridi knew that he had a history of depression and mental illness, it was foreseeable that their actions could have resulted in emotional distress. Stephanie Dridi testified, however, that her brother was likely distressed not over the search of the home but because his mother did not approve of his upcoming marriage to Miller. Stephanie Dridi also testified that Steven Szekeres had suffered with emotional issues for a long time preceding the events leading to the plaintiffs' claims. Based on this conflicting evidence, and because it was the jury's role to weigh and credit the evidence, we cannot conclude that the verdict was improper.

2

The plaintiffs further claim that the jury's verdict regarding their claim for slander was against the weight of the evidence. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . ." (Internal quotation marks omitted.) *Spears* v. *Elder*, 124 Conn. App. 280, 287, 5 A.3d 500, cert. denied, 299 Conn. 913, 10 A.3d 528 (2010). "Slander is oral defamation." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 848, 888 A.2d 104 (2006).

The court properly instructed the jury that the statements made by Joyce Szekeres and Stephanie Dridi to the victim's advocate and the police are subject to qualified immunity unless they are made with malice.

See *Gallo* v. *Barile*, 284 Conn. 459, 463, 935 A.2d 103 (2007). "Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Malice in fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives." (Internal quotation marks omitted.) Id., 463 n.6.

The plaintiffs contend that the jury's verdict was not supported by the evidence because they established every element of defamation. The plaintiffs claim that the statements of Joyce Szekeres and Stephanie Dridi were made with actual knowledge that they were false or with reckless disregard of whether they were false because Joyce Szekeres and Stephanie Dridi did not know whether the alleged guns existed at the time they reported the plaintiffs to the police or the victim's advocate. Joyce Szekeres and Stephanie Dridi reported, however, that Steven Szekeres had previously threatened them with guns that he owned at the time at which the threats were made. The jury could have determined that the statements of Joyce Szekeres and Stephanie Dridi were not knowingly false or malicious on the basis of their knowledge that Steven Szekeres owned guns in the past and that he possibly still owned them. Thus, we cannot conclude that the jury's verdict was against the weight of the evidence presented at trial.

B

The plaintiffs also claim that the directed verdict as to their intentional infliction of emotional distress count was improper and prejudicial. To prove intentional infliction of emotional distress, a plaintiff must demonstrate "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known

that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . .

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Citations omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).

Although the conduct of Joyce Szekeres and Stephanie Dridi in this case may have caused the plaintiffs some stress, we cannot conclude that the court, in the exercise of its gatekeeping function, incorrectly determined that their conduct was not outrageous and beyond the bounds of decency. Accordingly, the court did not improperly grant a directed verdict against the plaintiffs on their claim for intentional infliction of emotional distress.[7]

---

[7] The plaintiffs also claim that the court improperly failed to instruct the jury as to slander per se and that the inclusion on the jury verdict form and interrogatories of the directed verdict as to their claim for intentional infliction of emotional distress prejudiced them and tainted the entire case. Because the plaintiffs did not request a jury instruction on slander per se, did not take exception to the court's instructions to the jury and did not object to the verdict form and interrogatories, their claims are unpreserved. Accordingly, we decline to review them. See footnote 6 of this opinion.

## III

### AC 30339

On September 13, 2004, the plaintiffs filed a five count complaint against Stephanie Dridi and Chaker Dridi. Joyce Szekeres was not a defendant in this action. The allegations in the plaintiffs' complaint arise from their claim that, on February 1, 2000, the Dridis illegally entered their home and changed the locks, and from their claim that the arrest and criminal prosecution of Steven Szekeres for disorderly conduct was a result of an incident between the parties that took place that day. The plaintiffs alleged statutory theft, trespass, malicious prosecution and intentional and negligent infliction of emotional distress. The Dridis filed an answer as to all five counts, twelve special defenses[8] and a counterclaim. The counterclaim was brought on behalf of the Dridis and Joyce Szekeres, alleging vexatious litigation under General Statutes § 52-568 and intentional infliction of emotional distress. As noted, this third case was consolidated with the other two cases for trial to a jury. The court directed a verdict against the plaintiffs as to their claim for malicious prosecution. The jury found in favor of the Dridis on all of the counts of the plaintiffs' complaint and in favor of the defendants on both counts of their counterclaim. As to count one of the counterclaim, vexatious litigation, the jury awarded Joyce Szekeres $85,000 and the Dridis $17,500 each. On count two of the counterclaim, intentional infliction of emotional distress, the jury awarded Joyce Szekeres $100,000 but awarded no damages to the Dridis. This appeal followed.

---

[8] The answer also included twelve special defenses: (1) statute of limitations; (2) prior pending action doctrine; (3) abandonment and vacating of premises, abandoned and discarded possessions; (4) the plaintiffs' lease expired on February 1, 2000; (5) nuisance; (6) fraud; (7) vexatious lawsuit; (8) failure to state a claim; (9) estoppel; (10) collateral estoppel; (11) res judicata; and (12) breach of fiduciary duty.

On June 9, 2009, while this appeal was pending, the plaintiffs filed a motion to dismiss the judgment against them that was rendered in favor of Joyce Szekeres on the counterclaim because she was not a party to this action. The court determined that it lacked subject matter jurisdiction over Joyce Szekeres' counterclaim and, accordingly, vacated the judgment and the attendant damages in the amount of $185,000 that had been rendered in this case in her favor.

## A

The plaintiffs first claim that the evidence presented at trial did not support the jury's verdict in favor of the Dridis on all counts of their complaint. Again, in reviewing these claims, we determine whether, based on the evidence presented at trial, the jury reasonably could have reached its verdict. See part I A of this opinion.

## 1

We begin with the plaintiffs' claim of statutory theft. The plaintiffs alleged that the Dridis broke into their home and "changed the locks, thereby seizing [the plaintiffs'] dwelling and their property contained therein." "Statutory theft pursuant to [General Statutes] § 52-564 . . . is synonymous with larceny under General Statutes § 53a-119, which provides in relevant part that '[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner.'" *Weiss* v. *Weiss*, 297 Conn. 446, 470 n.18, 998 A.2d 766 (2010). Because there was testimony that there was nothing in the house of any value that belonged to the plaintiffs, the jury was free to credit that testimony, which supports its verdict, and not the plaintiffs' conflicting claims.

2

The plaintiffs also contend that the jury improperly found in favor of the Dridis on their trespass claim. The court properly instructed the jury: "The essentials of an action for trespass are: (1) ownership or possessory interest in the premises by the plaintiffs; (2) invasion, intrusion or entry by the defendant affecting the plaintiffs' exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." See *Murphy* v. *EAPWJP, LLC*, 123 Conn. App. 316, 330, 1 A.3d 1171, cert. granted on other grounds, 298 Conn. 930, 5 A.3d 489 (2010). Because there was evidence presented from which the Dridis could have believed that the plaintiffs had abandoned the property, the jury reasonably could have found in favor of the Dridis on the plaintiffs' trespass claim.

3

The plaintiffs also claim that the jury's verdicts in favor of the Dridis on the plaintiffs' claims for intentional and negligent infliction of emotional distress were contrary to the evidence presented at trial. Because there was no evidence that the conduct of the Dridis was outrageous or beyond the bounds of decency, the jury properly found in favor of the Dridis on the plaintiffs' claim for intentional infliction of emotional distress. And, again, because there was evidence presented that the Dridis could have thought that the plaintiffs had abandoned the property, they could not have foreseen that entering the home and changing the locks would have caused emotional distress to the plaintiffs. Thus, we cannot conclude that the jury's verdict was improper.

B

The plaintiffs next claim that the court improperly directed a verdict in favor of the Dridis on the plaintiffs'

claim for malicious prosecution. As noted, on February 1, 2000, the plaintiffs arrived at the subject property to retrieve the remainder of their belongings. In an attempt to prevent an altercation, the police segregated the plaintiffs from the Dridis while the plaintiffs retrieved their belongings from the garage. In contravention of the police order, Steven Szekeres entered the room in the house in which the Dridis were waiting, and a dispute ensued. Consequently, Steven Szekeres was charged with disorderly conduct. Following a trial, Steven Szekeres was found not guilty.

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 122 Conn. App. 438, 443, 998 A.2d 838, cert. granted on other grounds, 298 Conn. 921, 4 A.3d 1227, 5 A.3d 486 (2010). "To establish a cause of action for either vexatious litigation or malicious prosecution, a plaintiff must prove want of probable cause, malice and a termination of suit in the plaintiff's favor." (Internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, supra, 296 Conn. 330.

In rendering a directed verdict in favor of the Dridis, the court noted that the criminal prosecution was not initiated by the Dridis and that it could not find that "the jury would be able to find from [the] evidence [presented at trial] that the Dridis did anything more than provide potentially incriminating information to the Monroe police." Here, although Steven Szekeres was found not guilty of the criminal offense with which he was charged, we agree with the court that the prosecution was not initiated by the Dridis, and, further, that there was no evidence presented that the prosecution

was pursued with malice. Accordingly, the court properly directed a verdict in favor of the Dridis on the plaintiffs' claim for malicious prosecution.

## C

The plaintiffs also claim that the evidence presented at trial did not support the jury's verdict in favor of the Dridis on the counterclaim alleging vexatious litigation.[9] We are not persuaded.[10]

The Dridis' claim for vexatious litigation, brought pursuant to § 52-568,[11] arises from two federal lawsuits filed against them by the plaintiffs. In the first federal lawsuit, the plaintiffs alleged that Stephanie Dridi, Joyce Szekeres and Schaeffer, the victim's advocate, acted "jointly and in concert" with each other and "under color of law," in violation of 42 U.S.C. § 1983, in maliciously procuring the issuance of a search warrant for the plaintiffs' home. The plaintiffs alleged that the

[9] The plaintiffs also challenge the jury's verdict in favor of the Dridis on their counterclaim for intentional infliction of emotional distress. Because the jury did not award the Dridis any damages on that count, however, the plaintiffs are not aggrieved by that judgment and, accordingly, are precluded from challenging it on appeal. See *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 152 n.12, 681 A.2d 293 (1996).

[10] The plaintiffs also claim that the court improperly denied their motion in limine to preclude the defendants from asking questions related to the outcome of the federal cases related to these parties. Because the outcome of the federal cases was relevant to the Dridis' counterclaim for vexatious litigation, the court properly denied the motion in limine but indicated that it would tell the jury "that there was a finding of no probable cause as to a conspiracy with a police officer or police officers and victim's advocate but that the federal court did not reach . . . the merits of the cases [presently before the court]."

[11] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

actions of Stephanie Dridi, Joyce Szekeres and Schaeffer violated their rights under the fourth and fourteenth amendments to the United States constitution and Connecticut common law. The federal court granted the motions for summary judgment filed by Stephanie Dridi, Joyce Szekeres and Schaeffer on all federal claims and declined to retain supplemental jurisdiction over the remaining state law claims. See *Szekeres* v. *Schaeffer*, 304 F. Sup. 2d 296 (D. Conn. 2004). In the other federal lawsuit, the plaintiffs alleged that Chaker Dridi and Stephanie Dridi, acted "jointly and in concert" with Monroe police officers Peter Howard and Mark Caufield, and "under color of law," in violation of 42 U.S.C. § 1983, in maliciously prosecuting Steven Szekeres on the basis of his actions on February 1, 2000, and deprived the plaintiffs of their property rights in violation of the fourth amendment to the United States constitution. The federal court granted summary judgment in favor of Howard and Caulfield, having previously dismissed the plaintiffs' constitutional claims against the Dridis, and declined to exercise supplemental jurisdiction over the plaintiffs' state claims and, therefore, dismissed them. See *Szekeres* v. *Howard*, United States District Court, Docket No. 3:01CV2099 (MRK), 2004 WL 722240 (D. Conn. March 26, 2004).

1

In challenging this verdict, the plaintiffs first contend that there was no termination of the federal lawsuits in the Dridis' favor. The plaintiffs denied that the actions were terminated in a manner favorable to the Dridis because the judgments in the federal court only addressed issues of federal law and the plaintiffs' claims under the United States constitution. "[W]e have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination

indicated his innocence or nonliability, so long as the proceeding has terminated without consideration." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 251, 597 A.2d 807 (1991).

Here, because all of the federal claims brought by the plaintiffs against the Dridis were dismissed, they were terminated in favor of the Dridis.[12] Thus, we cannot conclude that the jury's verdict in favor of the Dridis on their vexatious litigation claim was improper.

## 2

The plaintiffs also claim that the evidence was insufficient to show that the Dridis sustained any damages as a result of the vexatious litigation claim. As the court instructed the jury, "money damages [may be awarded] for all injuries or losses legally suffered due to the commencement and prosecution of the vexatious suit. Compensable injuries and losses may include legal fees for the cost of defending the underlying actions in federal court and any other economic and noneconomic injuries and losses which are claimed by the defendants and supported by the evidence." The court further instructed the jury that it could award economic and/or noneconomic damages, but limited economic damages to those damages sustained in association with the federal lawsuits only, not the cases at hand. The court indicated that the Dridis were seeking noneconomic damages for "mental anguish, humiliation, embarrassment, mortification, shame, fear and damage to reputation." The plaintiffs contend that the only evidence as to the economic damages incurred by the Dridis, namely, attorney's fees, pertained to all of the lawsuits collectively, not only the federal litigation.

[12] We note that the court instructed the jury: "A civil action finally terminates in a manner favorable to the defendants in that action when it's dismissed or goes to judgment for the defendants." The plaintiffs did not object to or take exception to that instruction.

Thus, the plaintiffs contend, the jury accurately could not have awarded damages on that basis. The plaintiffs, however, ignore the fact that the jury could have based its award on noneconomic factors. Because the verdict forms, to which the plaintiffs did not object, did not separate economic from noneconomic damages, it is not possible to discern the basis for the jury's award. Accordingly, the plaintiffs' claim must fail.

The judgments are affirmed.

In this opinion the other judges concurred.