## KATARI HASLAM-JAMES *v.* KIMBERLY LAWRENCE
## (AC 32761)

Lavine, Bear and Mihalakos, Js.

---

322

Argued October 25, 2011—officially released January 31, 2012

*Cecil J. Thomas*, for the appellant (plaintiff).

*Doris B. D'Ambrosio*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Katari Haslam-James, appeals from the trial court's judgment in favor of the defendant, Kimberly Lawrence, on two counts of her revised entry and detainer complaint. The plaintiff claims that the court erred in (1) concluding that the defendant's actions did not constitute an unlawful entry in violation of General Statutes § 47a-16 and thereby entitle her to damages under General Statutes § 47a-18a and (2) concluding that the defendant's actions did not violate the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On June 17, 2010, the defendant filed a summary process action against the plaintiff in the Housing Session of the Hartford Superior Court. On August 2, 2010, the court rendered judgment pursuant to a stipulated agreement reached by the parties through court-ordered mediation. In the stipulation, the parties agreed to a final stay of execution through August 10, 2010. The defendant agreed to return $800 of the plaintiff's $1200 security deposit no later than August 6, 2010, and the plaintiff agreed to leave the premises in "broom-clean condition" and return her keys to the defendant upon vacating.

On August 16, 2010, the plaintiff filed a three count amended complaint.[1] In the first count, the plaintiff alleged that on August 6, 2010, the defendant entered her dwelling unit, changed the locks and removed, damaged or took possession of certain personal property belonging to her in violation of General Statutes § 47a-43. In the second count, the plaintiff alleged that the

---

[1] On August 9, 2010, the plaintiff filed a verified lockout complaint with the Housing Session of the Hartford Superior Court. The amended complaint incorporated the allegations of the verified lockout complaint.

defendant's actions constituted a violation of § 47a-16 and she sought damages pursuant to § 47a-18a. In the third count, the plaintiff alleged that the defendant's actions on August 6 in changing the locks to her apartment and refusing her access through the end of the period staying execution violated both the terms of the parties' stipulation and CUTPA.

On August 31, 2010, the court heard evidence and oral argument on the present matter. Later that day, the court filed a memorandum of decision, rendering judgment in favor of the plaintiff on the first count of the amended complaint and for the defendant on the two remaining counts. Pursuant to General Statutes § 47a-45a, the court awarded the plaintiff $139 as restitution for property the defendant removed in violation of § 47a-43. On September 17, 2010, the plaintiff filed a motion to reargue and, on September 20, 2010, the court denied that motion. This appeal followed. On November 5, 2010, after the filing of the present appeal, the plaintiff filed a motion for articulation pursuant to Practice Book § 66-5 and, on December 2, 2010, the court issued an articulation of its decision.

The court articulated, as to the first count of the amended complaint, that the defendant entered the apartment and changed the locks at a time when the plaintiff was still the actual possessor of the property. The court further found that "[a]fter being made aware that the plaintiff was still in possession of the premises, there was a delay by the defendant in providing the plaintiff with access to the premises to remove her belongings."

As to the second count, the court articulated that the defendant, "having been informed by Valeria Calloway, an employee of the Hartford Housing Authority, that the plaintiff had vacated the premises, did enter those premises and begin the process of cleaning the dwelling

unit. The sworn testimony established that the plaintiff told Ms. Calloway that she had moved from the premises."[2] The court further articulated that "the defendant's entry was not an abuse of her right of entry based on the [defendant's] reliance on information from the Hartford Housing Authority. . . . In the context of the evidence presented as to the time frame for the plaintiff to vacate the premises pursuant to a stipulation between the parties, the court [found] the defendant's reliance on information from the plaintiff transmitted through a representative from the Hartford Housing Authority, to be reasonable."[3]

As to the third count, the court articulated that the actions of the defendant, "given the nature of the stipulated agreement and the evidence adduced at trial," did not constitute a practice prohibited under CUTPA. The court further articulated that "the defendant's actions, in their totality, including returning the plaintiff's security deposit related to the underlying tenancy, were

[2] The plaintiff testified that she received a rent subsidy through the "Hartford section eight [program]," which is the Section 8 Housing Assistance Payments program of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, codified at 42 U.S.C. § 1437f (Section 8). The Hartford Housing Authority administered the local section 8 program in which the plaintiff participated, and the record reflects that Calloway's contact with the plaintiff was to assist her concerning her housing needs. "Section 8 . . . provides for low-income housing assistance. The purpose of Section 8 is to [aid] 'low-income families in obtaining a decent place to live' and to promote 'economically mixed housing' by providing assistance payments. 42 U.S.C. § 1437f (a). Section 8 also authorizes the [United States Department of Housing and Urban Development] Secretary 'to enter into annual contribution contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section.' 42 U.S.C. § 1437f (b)." *Diaz* v. *Tucumcari*, United States District Court, Docket No. CV 11-0090 (JOB) (D.N.M. December 19, 2011).

[3] In addition, the court credited testimony of the defendant's agent as to the items left by the plaintiff in the apartment. The removed property included cleaning supplies, curtains, painting supplies and paint.

undertaken in good faith and not to perpetrate an unfair or deceptive trade or practice."

I

On appeal, the plaintiff first claims that, having found her in actual possession of the premises, the court erred in concluding that the defendant's conduct did not violate § 47a-16.[4] Specifically, the plaintiff argues that by finding the defendant's actions justified due to her reliance on information provided by Calloway, the court improperly created an exception not found in the plain language of § 47a-16 (d). The plaintiff contends that permitting a landlord "to rely upon the representations of a third party with no possessory interest in the subject premises and without making any effort to contact the tenant prior to entry, creates an absurd and unworkable result. Such a holding creates precedent for potentially limitless exceptions to a rule that has ancient public policy considerations." We disagree.

The plaintiff's claim raises a question of statutory interpretation, over which our review is plenary. See *Bengtson* v. *Commissioner of Motor Vehicles*, 86 Conn. App. 51, 56, 859 A.2d 967 (2004), cert. denied, 272 Conn.

---

[4] General Statutes § 47a-16 provides: "(a) A tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to inspect the premises, make necessary or agreed to repairs, alterations or improvements, supply necessary or agreed to services or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.

"(b) A landlord may enter the dwelling unit without consent of the tenant in case of emergency.

"(c) A landlord shall not abuse the right of entry or use such right of entry to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter and may enter only at reasonable times, except in case of emergency.

"(d) A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises."

922, 867 A.2d 837 (2005). "Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Rodriguez* v. *Ancona*, 88 Conn. App. 193, 197, 868 A.2d 807 (2005).

Generally, a landlord may not enter a dwelling unit without the consent of the unit's tenant. Section 47a-16 (d) codifies four exceptions to that general rule, including, inter alia, allowing a landlord to enter a dwelling unit without consent "in case of emergency" and where "the tenant has abandoned or surrendered the premises." General Statutes § 47a-16 (d) (1) and (4). The plaintiff asks this court to adopt a narrow reading of § 47a-16 (d), essentially requiring a court to award damages pursuant to § 47a-18a whenever a landlord enters a tenant's apartment without consent while the tenant remains in actual possession of the premises, regardless of the reasonableness of the landlord's conduct.[5]

Although § 47a-16 (d) does not provide explicitly for consideration of the reasonableness of a landlord's belief that a tenant has vacated or abandoned a dwelling unit, such legislative silence does not necessarily create

---

[5] General Statutes § 47a-18a provides: "If the landlord makes an entry prohibited by section 47a-16 or 47a-16a, or makes repeated demands for entry otherwise lawful but which have the effect of unreasonably harassing the tenant, the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. The tenant may also obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement."

an ambiguity in whether to apply a reasonableness standard. See, e.g., *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004) (silence in statute does not necessarily equate to ambiguity). Considering the text of § 47a-16 and its relationship to other statutes, we conclude that a proper reading of the statute permits consideration of the reasonableness of a landlord's conduct.

In support of our conclusion, we note the language of General Statutes § 47a-11b (c), which provides in relevant part: "The landlord shall not be required to serve a notice to quit . . . and bring a summary process action . . . to obtain possession or occupancy of a dwelling unit which has been abandoned. Nothing in this section shall relieve a landlord from complying with the provisions of sections 47a-1 to 47a-20a, inclusive . . . if the landlord knows, *or reasonably should know*, that the occupant has not abandoned the dwelling unit." (Emphasis added.) Thus, the foregoing sentence in § 47a-11b (c) requires an examination of the reasonableness of a landlord's knowledge in circumstances where an abandonment of a dwelling unit has not occurred. Although this statute is of limited applicability under the facts of this case, in which the defendant already has resorted to the dispossession procedure provided by the summary process statutes, we find its reference to a reasonableness standard to be instructive.[6]

Moreover, practical realities counsel against finding a landlord liable for entry into a tenant's apartment when such entry is predicated on facts creating a reasonable belief that an exception to the notice requirement of § 47a-16 applies. For example, it could be a

___

[6] Additionally, we also note that in contrast to the present facts, § 47a-11b applies in circumstances in which the occupants of a dwelling unit "have vacated the premises without notice to the landlord . . . ." General Statutes § 47a-11b (a). Here, the court found that the plaintiff conveyed notice to the defendant through Calloway that she had vacated the premises.

disproportionate result for a landlord to pay at least one month's rent and attorney's fees to a tenant in a situation where the landlord, at the time of entry into a dwelling unit, acted pursuant to a reasonable, good faith belief that an emergency existed, even if the landlord, ultimately, was mistaken. In light of the specific exception for emergency action, we do not think the legislature intended to discourage a landlord's action under such circumstances. See, e.g., *Shortell* v. *Cavanagh*, 300 Conn. 383, 388–89, 15 A.3d 1042 (2011) (recognizing that "those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results" [internal quotation marks omitted]). The landlord's good faith factually based belief that the tenant has abandoned or surrendered the premises should result in the same conclusion.

We perceive no clear error in the court's finding that the defendant's reliance on information conveyed by Calloway was reasonable under the circumstances, and we note that the plaintiff does not challenge this finding. Here, the defendant abided by the statutes governing summary process and entered into a stipulated agreement accepted by the court for judgment and delaying the initiation of her right to obtain possession of the unit by execution against the plaintiff. Under the facts of this case, as found by the court, it was not unreasonable for the defendant, on the basis of the information provided by Calloway that the plaintiff had abandoned or vacated the premises, to act earlier than the parties' stipulation had required. Accordingly, we determine that the court did not err in concluding that the defendant did not violate § 47a-16 when she acted in reliance on representations of the plaintiff conveyed through Calloway, an employee of the Hartford housing authority, that the plaintiff had abandoned or surrendered the subject premises.

## II

The plaintiff next claims that the trial court erred in concluding that the defendant's actions did not violate CUTPA. The plaintiff argues that the trial court should have found a violation of CUTPA under that statute's public policy prong based on the court's finding that the defendant violated § 47a-43 (a).[7] In addition, the plaintiff argues that the court erred in "finding that the defendant acted in good faith, and in finding that such good faith constituted a defense to a finding of a CUTPA violation." We disagree.

"Whether the defendant is subject to CUTPA is a question of law, not fact. . . . [W]hether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Szekeres* v. *Szekeres*, 126 Conn. App. 829, 841, 16 A.3d 713, cert. denied, 300 Conn. 939, 17 A.3d 475 (2011).

"CUTPA was designed to protect the public from unfair practices, and whether a practice is unfair

---

[7] General Statutes § 47a-43 (a) provides: "When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

depends upon the finding of a violation of an identifiable public policy. Certainly, therefore, a violation of CUTPA can be found . . . where the defendant's actions violate the public policy found in two subdivisions of . . . § 47a-43 (a). Subdivisions (3) and (4) of § 47a-43 (a) establish causes of action '[w]hen any . . . person enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor' or 'when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession . . . .'

"These provisions of § 47a-43 uphold the long-standing public policy against proceeding by way of self-help remedies when evicting a tenant, especially when a landlord has available the summary process procedures found in chapter 832 of the General Statutes. This public policy dictates that landlords proceed . . . according to those statutes put in place to enable them to enforce their legal rights." *Daddona* v. *Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 257–58, 550 A.2d 1061 (1988).

Here, the defendant's conduct, although ultimately determined to be in violation of § 47a-43, did not violate the public policy that our entry and detainer statutes seek to uphold. The defendant was not attempting to exercise a self-help remedy, as she previously had availed herself of the statutory summary process procedures to initiate and pursue proceedings in court to recover possession of the unit occupied by the plaintiff. Rather, the court found that the defendant was acting pursuant to a reasonable, albeit mistaken, belief that the plaintiff had vacated fully the premises approximately five days earlier than the parties' stipulation required.

Although the plaintiff makes much of the language in *Daddona* that "the subjective good faith of one who

has in fact performed an unfair or deceptive act is not a defense to a CUTPA violation"; (internal quotation marks omitted) id., 255; we defer to the court's finding that the defendant's actions, "given the nature of the stipulated agreement and the evidence adduced at trial," were neither unfair nor deceptive.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] To the extent that the plaintiff challenges the court's finding that the defendant acted in good faith, we are not persuaded. The court was in the best position to judge the testimony adduced, and our review of the record reveals evidence in support of its finding. See *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991) ("[b]ecause it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings"). Accordingly, we conclude that the court's finding that the defendant acted in good faith was not clearly erroneous.